# NORWOOD v. BAKER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

No. 34.   Submitted May 3, 1898. — Decided December 12, 1898.

The principle underlying special assessments upon private property to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore that the owners do not in fact pay anything in excess of what they receive by reason of such improvement.

The exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation; but, unless such excess of cost over special benefits be of a material character, it ought not to be regarded by a court of equity, when its aid is invoked to restrain the enforcement of a special assessment.

The constitution of Ohio authorizes the taking of private property for the purpose of making public roads, but requires a compensation to be made therefor to the owner, to be assessed by a jury, without deduction for benefits. The statutes of the State, quoted or referred to in the opinion of the court, make provisions for the manner in which this power is to be exercised. In the case of the opening of a new road, they authorize a special assessment upon bounding and abutting property by the front foot for this entire cost and expense of the improvement, without taking special benefits into account. The alleged improvement in this case was the construction through property of the appellee of a street 300 feet in length and 50 feet in width, to connect two streets of that width running from each end in opposite directions. In the proceedings in this case the corporation of Norwood manifestly went upon the theory that the abutting property could be made to bear the whole cost of the new road, whether it was benefited or not to the extent of such cost, and the assessment was made accordingly. This suit was brought to obtain a decree restraining the corporation from enforcing the assessment against the plaintiff's abutting property, which decree was granted. *Held*, that the assessment was, in itself, an illegal one, because it rested upon a basis that excluded any consideration of benefits; that therefore a decree enjoining the whole assessment was the only appropriate decree; that it was not necessary to tender, as a condition of relief being granted to the plaintiff, any sum as representing what she supposed, or might guess, or was willing to concede was the excess of costs over any benefits accruing to the property; and that the legal effect of the decree was only to prevent the enforcement of the particular assessment in question, leaving the corporation free to take such steps as might be within its power, to make a new assessment upon the plaintiff's abutting property for so much of the expense of opening the street as might be found equal to the special benefits accruing to the property.

THE case is stated in the opinion.

*Mr. William E. Bundy* for appellant.

*Mr. Charles W. Baker* for appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

This case arises out of the condemnation of certain lands for the purpose of opening a street in the Village of Norwood, a municipal corporation in Hamilton County, Ohio.

The particular question presented for consideration involves the validity of an ordinance of that Village, assessing upon

the appellee's land abutting on each side of the new street an amount covering not simply a sum equal to that paid for the land taken for the street, but, in addition, the costs and expenses connected with the condemnation proceedings.

By the final decree of the Circuit Court of the United States it was adjudged that the assessment complained of was in violation of the Fourteenth Amendment of the Constitution of the United States forbidding any State from depriving a person of property without due process of law; and the Village was perpetually enjoined from enforcing the assessment. 74 Fed. Rep. 997.

The present appeal was prosecuted directly to this court, because the case involved the construction and application of the Constitution of the United States.

It will conduce to a clear understanding of the case to ascertain the powers of the Village under the constitution and statutes of Ohio, and to refer somewhat in detail to the proceedings instituted for the opening of the street through appellee's property.

By the constitution of Ohio it is declared: " Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money ; . . . and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner." Const. Ohio, 1851, Art. 1, § 19, Bill of Rights; 3 Bates Anno. Ohio Stat. 3525.

Cities and villages in Ohio are by statute given power to lay off, establish, open, widen, narrow, straighten, extend, keep in order and repair, and light streets, alleys, public grounds and buildings, wharves, landing places, bridges and market spaces within the corporation, and to appropriate private property for the use of the corporation. And " each city and village may appropriate, enter upon, and hold real

estate within its corporate limits for the following purposes, but no more shall be taken or appropriated than is reasonably necessary for the purpose to which it is to be applied : 1. For opening, widening, straightening and extending streets, alleys and avenues; also for obtaining gravel or other material for the improvement of the same, and for this purpose the right to appropriate shall not be limited to lands lying within the limits of the corporation, . . ." 1 Rev. Stat. Ohio, (1890) § 1692, sub. div. 18 and 33, and § 2232, pp. 429, 430, Title, Cities and Villages; Enumeration of Powers, and p. 572, Title, Appropriation by Cities and Villages of Private Property to Public Use.

Other provisions of the statute prescribe the steps to be taken in the appropriation by a municipal corporation of private property for public purposes. §§ 2233 to 2261 inclusive.

It is further provided by the statutes of Ohio, (1890) Title XII, Assessments, etc., chap. 4, as follows :

"§ 2263. When the corporation appropriates, or otherwise acquires, lots or lands for the purpose of laying off, opening, extending, straightening or widening a street, alley or other public highway, or is possessed of property which it desires to improve for street purposes, the council may assess the cost and expenses of such appropriation or acquisition, and of the improvement, or of either, or of any part of either, upon the general tax list, in which case the same shall be assessed upon all the taxable real and personal property in the corporation.

"§ 2264. In the cases provided for in the last section, and in all cases where an improvement of any kind is made of an existing street, alley or other public highway, the council may decline to assess the costs and expenses in the last section mentioned or any part thereof, or the costs and expenses or any part thereof of such improvement, except as hereinafter mentioned, on the general tax list, in which event such costs and expenses, or any part thereof which may not be so assessed on the general tax list, shall be assessed by the council on the abutting and such adjacent and contiguous or other benefited lots and lands in the corporation, *either* in proportion to the benefits which may result from the improve-

ment, *or* according to the value of the property assessed, *or* by *the front foot of the property bounding and abutting upon the improvement,* as the council, by ordinance setting forth specifically the lots and lands to be assessed, may determine before the improvement is made, and in the manner and subject to the restrictions herein contained; and the assessments shall be payable in one or more instalments, and at such times as the council may prescribe. . . ." 1 Rev. Stat. Ohio, p. 581.

Section 2271 provides: " In cities of the first grade of the first class, and in corporations in counties containing a city of the first grade of the first class, the tax or assessment especially levied or assessed upon any lot or land for any improvement, shall not, except as provided in § 2272, exceed twenty-five per centum of the value of such lot or land after the improvement is made, and the cost exceeding that per centum shall be paid by the corporation out of its general revenue; . . . and whenever any street or avenue is opened, extended, straightened or widened, the special assessment for the cost and expense, or any part thereof, shall be assessed *only on the lots and lands bounding and abutting on such part or parts of said street or avenue* so improved, and shall include of such lots and lands only to a fair average depth of lots in the neighborhood, but shall also include other lots and parts thereof and lands to such depth; and whenever at least one half in width of any street or avenue has been dedicated for such purpose from the lots and lands lying on one side of the line of such street or avenue, and such street or avenue is widened by taking from lots and lands on the other side thereof, no part of the cost and expense thus increased [incurred] shall be assessed upon the lots and lands lying on said first-mentioned side, but only upon the other side, and as aforesaid, but said special assessment shall not be in any case in excess of benefits." 1 Rev. Stat. Ohio, p. 586.

Section 2272 relates to assessments for improvements made in conformity with the petition of the owners of property.

By section 2277 it is provided that " in cases wherein it is determined to assess the whole or any part of the cost of an improvement upon the lot or lands bounding or abutting

upon the same, or upon other lots or lands benefited thereby, as provided in § 2264, the council may require the board of improvements, or board of public works, as the case may be, or may appoint three disinterested freeholders of the corporation or vicinity, to report to the council an estimated assessment of such cost on the lots or lands to be charged therewith, in proportion, as nearly as may be, to the benefits which may result from the improvement to the several lots or parcels of land so assessed, a copy of which assessment shall be filed in the office of the clerk of the corporation for public inspection."

Section 2284 is in these words: "The cost of any improvement contemplated in this chapter shall include the purchase money of real estate, or any interest therein, when the same has been acquired by purchase, or the value thereof as found by the jury, where the same has been appropriated, the costs and expenses of the proceedings, the damages assessed in favor of any owner of adjoining lands and interest thereon, the costs and expenses of the assessment, the expense of the preliminary and other surveys, and of printing, publishing the notices and ordinances required, including notice of assessment, and serving notices on property owners, the cost of construction, interest on bonds where bonds have been issued in anticipation of the collection of assessments, and any other necessary expenditure."

By an ordinance approved October 19, 1891, the Village declared its intention to condemn and appropriate, and by that ordinance condemned and appropriated, the lands or grounds in question for the purpose of opening and extending Ivenhoe Avenue: and in order to make such appropriation effectual, the ordinance directed the institution of the necessary proceedings in court for an inquiry and assessment of the compensation to be paid for the property to be condemned.

The ordinance provided that the cost and expense of the condemnation of the property, including the compensation paid to the owners, the cost of the condemnation proceedings, the cost of advertising and all other costs and the interest on bonds issued, if any, should be assessed "*per front foot* upon the property bounding and abutting on that part of Ivenhoe

Avenue, as condemned and appropriated herein " — the assessments payable in ten annual instalments if deferred, and the same collected as prescribed by law and in the assessing ordinance thereafter to be passed.

Under that ordinance, application was made by the Village to the probate court of Hamilton County for the empanelling of a jury to assess the compensation to be paid for the property to be taken. A jury was accordingly empanelled, and it assessed the plaintiff's compensation at $2000, declaring that they made the "assessment irrespective of any benefit to the owner from any improvement proposed by said corporation."

The assessment was confirmed by the court, the amount assessed was paid to the owner, and it was ordered that the Village have immediate possession and ownership of the premises for the uses and purposes specified in the ordinance.

The property condemned is indicated by the following plat :

After the finding of the jury the Village council passed an ordinance levying and assessing "*on each front foot* of the several lots of land bounding and abutting on Ivenhoe Avenue, from Williams Avenue to a point 300 feet north," certain sums for each of the years 1892 to 1901 inclusive, "to pay the cost and expense of condemning property for the extension of said Ivenhoe Avenue between the points aforesaid [from Williams Avenue to a point 300 feet north], together with the interest on the bonds issued to provide a fund to pay for said condemnation."

By the same ordinance provision was made for issuing bonds to provide for the payment of the cost and expense of the condemnation, which included the amount found by the jury as compensation for the property taken, the costs in the condemnation proceedings, solicitor and expert witness fees, advertising, etc.; in all, $2218.58.

The present suit was brought to obtain a decree restraining the Village from enforcing the assessment in question against the abutting property of the plaintiff.

It was conceded that the defendant assessed back upon the plaintiff's 300 feet of land upon either side of the strip taken (making 600 feet in all of frontage upon the strip condemned) the above sum of $2218.58, payable in instalments, with interest at six per cent, the first instalment being $354.97 and the last or tenth instalment $235.17, lessening the same from year to year in an amount of about $13 per annum; and the Village admitted that the assessment had been placed upon the tax duplicate, and sent to the county treasurer for collection, *as a lien and charge against the abutting property* owned by the plaintiff.

But the Village alleged that the appropriation proceedings and consequent assessment were all in strict conformity with the laws and statutes of the State of Ohio and in pursuance of due process of law; that the opening and extension of Ivenhoe Avenue constituted a public improvement for which the abutting property was liable to assessment under the laws of Ohio; that the counsel fees, witness fees and costs included in such total assessment were a part of the legitimate ex-

penses of such improvement; and that in any event an expense had been incurred by the municipal corporation in opening the street "equal to the full amount of the said assessment, which is a proper charge against the complainant's abutting property."

It was agreed at the hearing of the present case that the sum awarded by the verdict of the jury was paid to and received by the plaintiff, and that it was that sum, together with the costs and charges, that the Village undertook to assess back upon the land upon either side of said strip of land.

The plaintiff's suit proceeded upon the ground, distinctly stated, that the assessment in question was in violation of the Fourteenth Amendment providing that no State shall deprive any person of property without due process of law nor deny to any person within its jurisdiction the equal protection of the laws, as well as of the Bill of Rights of the Constitution of Ohio.

It has been adjudged that the due process of law prescribed by that Amendment requires compensation to be made or secured to the owner when private property is taken by a State or under its authority for public use. *Chicago, Burlington &c. Railroad* v. *Chicago,* 166 U. S. 226, 241; *Long Island Water Supply Co.* v. *Brooklyn,* 166 U. S. 685, 695.

The taking of the plaintiff's land for the street was under the power of eminent domain — a power which this court has said was the offspring of political necessity, and inseparable from sovereignty unless denied to it by the fundamental law. *Searl* v. *Lake County School District,* 133 U. S. 553. But the assessment of the abutting property for the cost and expense incurred by the Village was an exercise of the power of taxation. Except for the provision of the constitution of Ohio above quoted, the State could have authorized benefits to be deducted from the actual value of the land taken, without violating the constitutional injunction that compensation be made for private property taken for public use; for the benefits received could be properly regarded as compensation *pro tanto* for the property appropriated to public use. But

does the exclusion of benefits from the estimate of compensation to be made for the property actually taken for public use authorize the public to charge upon the abutting property the sum paid for it, together with the entire costs incurred in the condemnation proceedings, irrespective of the question whether the property was benefited by the opening of the street?

Undoubtedly abutting owners may be subjected to special assessments to meet the expenses of opening public highways in front of their property — such assessments, according to well-established principles, resting upon the ground that special burdens may be imposed for special or peculiar benefits accruing from public improvements. *Mobile County* v. *Kimball*, 102 U. S. 691, 703, 704; *Illinois Central Railroad* v. *Decatur*, 147 U. S. 190, 202; *Bauman* v. *Ross*, 167 U. S. 548, 589, and authorities there cited. And according to the weight of judicial authority, the legislature has a large discretion in defining the territory to be deemed specially benefited by a public improvement, and which may be subjected to special assessment to meet the cost of such improvements. In *Williams* v. *Eggleston*, 170 U. S. 304, 311, where the only question, as this court stated, was as to the power of the legislature to cast the burden of a public improvement upon certain towns, which had been judicially determined to be towns benefited by such improvement, it was said: "Neither can it be doubted that, if the state constitution does not prohibit, the legislature, speaking generally, may create a new taxing district, determine what territory shall belong to such district and what property shall be considered as benefited by a proposed improvement."

But the power of the legislature in these matters is not unlimited. There is a point beyond which the legislative department, even when exerting the power of taxation, may not go consistently with the citizen's right of property. As already indicated, the principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of

what they receive by reason of such improvement. But the guaranties for the protection of private property would be seriously impaired, if it were established as a rule of constitutional law, that the imposition by the legislature upon particular private property of the entire cost of a public improvement, irrespective of any peculiar benefits accruing to the owner from such improvement, could not be questioned by him in the courts of the country. It is one thing for the legislature to prescribe it as a *general* rule that property abutting on a street opened by the public shall be deemed to have been specially benefited by such improvement, and therefore should specially contribute to the cost incurred by the public. It is quite a different thing to lay it down as an absolute rule that such property, whether it is in fact benefited or not by the opening of the street, may be assessed by the front foot for a fixed sum representing the whole cost of the improvement, and without any right in the property owner to show, when an assessment of that kind is made or is about to be made, that the sum so fixed is in excess of the benefits received.

In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess*, a taking, under the guise of taxation, of private property for public use without compensation. We say "substantial excess," because exact equality of taxation is not always attainable, and for that reason the excess of cost over special benefits, unless it be of a material character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment.

In *Illinois Central Railroad* v. *Decatur*, 147 U. S. 190, 202, — where it was held that a provision in the charter of a railroad company exempting it from taxation did not exempt it from a municipal assessment imposed upon its land for grading and paving a street, — the decision rested upon the ground that a special assessment proceeds on the theory that the property charged therewith derives an increased value from the improvement, "the enhancement in value being the consideration for the charge."

In Cooley on Taxation, (2d ed. c. xx,) the author, in considering the subject of taxation by special assessment, and of estimating benefits conferred upon property by a public improvement, says that, while a general levy of taxes rests upon the ground that the citizen may be required to make contribution in that mode in return for the general benefits of government, special assessments are a peculiar species of taxation, and are made upon the assumption that "a portion of the community is to be specially and peculiarly benefited, in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and, in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it. The justice of demanding the special contribution is supposed to be evident in the fact that the persons who are to make it, while they are made to bear the cost of a public work, are at the same time to suffer no pecuniary loss thereby; their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay." Again, the author says: "There can be no justification for any proceeding which charges the land with an assessment greater than the benefits; it is a plain case of appropriating private property to public uses without compensation."

In *Macon* v. *Patty*, 57 Mississippi, 378, 386, the Supreme Court of Mississippi said that a special assessment is unlike an ordinary tax, in that the proceeds of the assessment must be expended in an improvement from which "a benefit clearly exceptive and plainly perceived must inure to the property upon which it is imposed."

So, *In the Matter of Canal Street*, 11 Wend. 154, 155, 156, which related to an assessment to meet the expenses of opening a street, the court, after observing that the principle that private property shall not be taken for public use without just compensation was found in the constitution and the laws of the State, and had its foundation in those elementary principles of equity and justice which lie at the root of the social compact, said: "The corporation may see the extent of the

benefit of any improvement, before proceedings are commenced; but the extent of injury to be done to individuals cannot be known to them until the coming in of the report of the commissioners; they may then be satisfied that the property which is to be benefited will not be benefited to the extent of the assessment necessary to indemnify those whose property is taken from them. What are they to do? If they proceed, they deprive some persons of their property unjustly; if the report of the commissioners is correct, the amount awarded to the owners of property taken cannot be reduced without injustice to them. If the assessment is confirmed and enforced, the owners of the adjacent property must pay beyond the enhanced value of their own property, and all such excess is private property taken for public use without just compensation."

In *McCormack* v. *Patchin*, 53 Missouri, 33, 36, the Supreme Court of Missouri said: " The whole theory of local taxation or assessments is that the improvements for which they are levied afford a remuneration in the way of benefits. A law which would attempt to make one person, or a given number of persons, under the guise of local assessments, pay a general revenue for the public at large, would not be an exercise of the taxing power, but an act of confiscation." See also *Zoeller* v. *Kellogg*, 4 Mo. App. 163.

In *State &c.* v. *Hoboken*, 36 N. J. L. 291, 293, which was the case of the improvement of a street and a special assessment to meet the cost, — such cost being in excess of the benefits received by the property owner, — it was held that to the extent of such excess private property was taken for public use without compensation, because that received by the landowner was not equal to that taken from him.

It will not escape observation that if the entire cost incurred by a municipal corporation in condemning land for the purpose of opening or extending a street can be assessed back upon the abutting property, without inquiry in any form as to the special benefits received by the owner, the result will be more injurious to the owner than if he had been required, in the first instance, to open the street at his own cost, without

compensation in respect of the land taken for the street; for, by opening the street at his own cost, he might save at least the expense attending formal proceedings of condemnation. It cannot be that any such result is consistent with the principles upon which rests the power to make special assessments upon property in order to meet the expense of public improvements in the vicinity of such property.

The views we have expressed are supported by other adjudged cases, as well as by reason and by the principles which must be recognized as essential for the protection of private property against the arbitrary action of government. The importance of the question before us renders it appropriate to refer to some of those cases.

In *State* v. *Newark*, 37 N. J. L. 415, 416, 420–423, the question arose as to the validity of an assessment of the expenses incurred in repairing the roadbed of a portion of one of the streets of the city of Newark. The assessment was made in conformity to a statute that undertook to fix, at the mere will of the legislature, the ratio of expense to be put upon the owners of property along the line of the improvement. Chief Justice Beasley, speaking for the Court of Errors and Appeals, said : " The doctrine that it is competent for the legislature to direct the expense of opening, paving or improving a public street, or at least some part of such expense, to be put as a special burthen on the property in the neighborhood of such improvement, cannot, at this day, be drawn in question. There is nothing in the constitution of this State that requires that all property in the State, or in any particular subdivision of the State, must be embraced in the operation of every law levying a tax. That the effect of such laws may not extend beyond certain prescribed limits, is perfectly indisputable. It is upon this principle that taxes raised in counties, townships and cities are vindicated. But while it is thus clear that the burthen of a particular tax may be placed on any political district to whose benefit such tax is to enure, it seems to me it is equally clear that, when such burthen is sought to be imposed on particular lands, not in themselves constituting a political subdivision of the State, we at once approach the

line which is the boundary between acts of taxation and acts of confiscation. I think it impossible to assert, with the least show of reason, that the legislative right to select the subject of taxation is not a limited right. For it would seem much more in accordance with correct theory to maintain that the power of selection of the property to be taxed cannot be contracted to a narrower bound than the political district within which it is to operate, than that such power is entirely illimitable. If such prerogative has no trammel or circumscription, then it follows that the entire burthen of one of these public improvements can be placed, by the force of the legislative will, on the property of a few enumerated citizens, or even on that of a single citizen. In a government in which the legislative power is not omnipotent, and in which it is a fundamental axiom that private property cannot be taken without just compensation, the existence of an unlimited right in the lawmaking power to concentrate the burthen of a tax upon specified property, does not exist. If a statute should direct a certain street in a city to be paved, and the expense of such paving to be assessed on the houses standing at the four corners of such street, this would not be an act of taxation, and it is presumed that no one would assert it to be such. If this cannot be maintained, then it follows that it is conceded that the legislative power in question is not completely arbitrary. It has its limit; and the only inquiry is, where that limit is to be placed."

After referring to a former decision of the same court, in which it was said that special assessments could be sustained upon the theory that the party assessed was locally and peculiarly benefited above the ordinary benefit which as one of the community he received in all public improvements, the opinion proceeds: " It follows, then, that these local assessments are justifiable on the ground above, that the locality is especially to be benefited by the outlay of the money to be raised. Unless this is the case no reason can be assigned why the tax is not general. An assessment laid on property along a city street for an improvement made in another street, in a distant part of the same city, would be universally condemned,

both on moral and legal grounds. And yet there is no difference between such an extortion and the requisition upon a landowner to pay for a public improvement over and above the exceptive benefit received by him. It is true that the power of taxing is one of the high and indispensable prerogatives of the government, and it can be only in cases free from all doubt that its exercise can be declared by the courts to be illegal. But such a case, if it can ever arise, is certainly presented when a property is specified, out of which a public improvement is to be paid for in excess of the value specially imparted to it by such improvement. As to such excess I cannot distinguish an act exacting its payment from the exercise of the power of eminent domain. In case of taxation the citizen pays his quota of the common burthen; when his land is sequestered for the public use he contributes more than such quota, and this is the distinction between the effect of the exercise of the taxing power and that of eminent domain. When, then, the overplus beyond benefits from these local improvements is laid upon a few landowners, such citizens, with respect to such overplus, are required to defray more than their share of the public outlay, and the coercive act is not within the proper scope of the power to tax."

So, in *Bogert* v. *Elizabeth City*, 27 N. J. Eq. 568, 569, which involved the validity of a provision in the charter of a city directing the whole cost of special improvements to be put on the property on the line of the street opposite such improvements, the assessments to be made in a just and equitable manner by the common city council, the court said: "The sum of the expense is ordered to be put on certain designated property, without regard to the proportion of benefit it has received from the improvement. The direction is perfectly clear; the entire burthen is to be borne by the land along the line of the improvement, and the ratio of distribution among the respective lots is left to the judgment of the common council. Such a power, according to legal rules now at rest in this State, cannot be executed. The whole clause is nugatory and void, and all proceedings under it are not mere irregularities, but are nullities."

In *Hammett* v. *Philadelphia*, 65 Penn. St. 146, 151, 153, the court, speaking by Judge Sharswood, said that it was a point fully settled and at rest in that State, that the legislature has the constitutional right to confer upon municipal corporations the power of assessing the costs of local improvements upon the properties benefited, and that on the same principle the validity of municipal claims assessing on the lots fronting upon streets their due share of the cost of grading, curbing, paving, building sewers and culverts, and laying water pipes, in proportion to their respective fronts, has been repeatedly recognized, and the liens for such assessments enforced. "These cases," the court said, "all fall strictly within the rule as originally enunciated — local taxation for local purposes — or, as it has been elsewhere expressed, taxation on the benefits conferred, and *not beyond the extent of those benefits*. . . . If the sovereign breaks open the strong box of an individual or corporation and takes out money, or, if, not being paid on demand, he seizes and sells the lands or goods of the subject, it looks to me very much like a direct taking of private property for public use. It certainly cannot alter the case to call it taxation. Whenever a local assessment upon an individual is not grounded upon and *measured by, the extent of his particular benefit*, it is, *pro tanto*, a taking of his private property for public use without any provision for compensation."

In *Barnes* v. *Dyer*, 56 Vermont, 469, 471, which involved the validity of a statute relating to the construction and repair of sidewalks in a city of Vermont, under the authority of its common council, and directing the expense to be assessed on the owners of property through which or fronting which such sidewalks should be constructed, it was said: "The act in question made no express allusion to assessment on account of benefit; neither does it limit the assessment to the amount of benefit. Yet, as we have seen, the right to assess at all depends solely on benefit, and must be proportioned to and limited by it. An improvement might cost double the benefit to the land specially benefited."

In *Thomas* v. *Gain*, 35 Michigan, 155, 162, Chief Justice Cooley, speaking for the Supreme Court of Michigan, said:

"It is generally agreed that an assessment levied without regard to actual or probable benefits is unlawful, as constituting an attempt to appropriate private property to public uses. This idea is strongly stated in *Tide-Water Co.* v. *Coster*, 18 N. J. Eq. (3 C. E. Green) 519, which has often been cited with approval in other cases. It is admitted that the legislature may prescribe the rule for the apportionment of benefits, but it is not conceded that its power in this regard is unlimited. The rule must at least be one which it is legally possible may be just and equal as between the parties assessed ; if it is not conceivable that the rule prescribed is one which will apportion the burthen justly, or with such proximate justice as is usually attainable in tax cases, it must fall to the ground, like any other merely arbitrary action which is supported by no principle."

In the case of *Tide-Water Co.* v. *Coster, supra*, 518, 527, 528, referred to by the Supreme Court of Michigan, it was said : "Where lands are improved by legislative action on the ground of public utility, the cost of such improvement, it has frequently been held, may, to a certain degree, be imposed on the parties who, in consequence of owning the lands in the vicinity of such improvement, receive a peculiar advantage. By the operation of such a system it is not considered that the property of the individual, or any part of it, is taken from him for the public use, because he is compensated in the enhanced value of such property. But it is clear this principle is only applicable when the benefit is commensurate to the burthen, when that which is received by the landowner is equal or superior in value to the sum exacted ; for if the sum exacted be in excess, then *to that extent*, most incontestably, private property is assumed by the public. Nor, as to this excess, can it be successfully maintained that such imposition is legitimate, as an exercise of the power of taxation. Such an imposition has none of the essential characteristics of a tax. We are to bear in mind that this projected improvement is to be regarded as one in which the public has an interest. The owners of these lands have a special concern in such improvements so far as particular lands will be in a peculiar manner benefited.

Beyond this their situation is like the rest of the community. The consideration for the excess of the cost of improvement over the enhancement of the property within the operation of the act is the public benefit. The expenditure of this portion of the cost of the work can only be justified on the ground of benefit to the public. I am aware of no principle that will permit the expense incurred in conferring such benefit on the public to be laid in the form of a tax upon certain persons."

In Dillon's Treatise on Municipal Corporations there is an extended discussion of this whole subject. In section 761 he states the general results of the cases in the several States concerning special assessments for local improvements. After stating that a local assessment or tax upon the property bene-fited by a local improvement may be authorized by the legis-lature, he says: "Special benefits to the property assessed, that is, benefits received by it in addition to those received by the community at large, is the true and only just foundation upon which local assessments can rest; and *to the extent of special benefits* it is everywhere admitted that the legislature may authorize local taxes or assessments to be made." Again, the author says: "When not restrained by the constitution of the particular State, the legislature has a discretion, com-mensurate with the broad domain of legislative power, in making provisions for ascertaining what property is specially benefited and how the benefits shall be apportioned. This proposition, as stated, is nowhere denied. But the adjudged cases do not agree upon the extent of legislative power." While recognizing the fact that some courts have asserted that the authority of the legislature in this regard is quite without limits, the author observes that "the decided ten-dency of the later decisions, including those of the courts of New Jersey, Michigan and Pennsylvania, is to hold that the legislative power is not unlimited, and that these assessments must be apportioned by some rule capable of producing reasonable equality, and that provisions of such a nature as to make it legally impossible that the burden can be appor-tioned with proximate equality are arbitrary exactions and not an exercise of legislative authority." He further says:

"Whether it is competent for the legislature to declare that no part of the expense of a local improvement of a public nature shall be borne by a general tax, and that the whole of it shall be assessed upon the abutting property and other property in the vicinity of the improvement, thus for itself conclusively determining, not only that such property is specially benefited, but that it *is* thus benefited to the extent of the cost of the improvement, and then to provide for the apportionment of the amount by an estimate to be made by designated boards or officers, or by frontage or superficial area, is a question upon which the courts are not agreed. Almost all of the earlier cases asserted that the legislative discretion in the apportionment of public burdens extended this far, and such legislation is still upheld in most of the States. But since the period when express provisions have been made in many of the state constitutions requiring uniformity and equality of taxation, several courts of great respectability, either by force of this requirement or in the spirit of it, and perceiving that *special benefits actually received* by each parcel of contributing property, *was the only principle upon which such assessments can justly rest*, and that any other rule is unequal, oppressive and arbitrary, have denied the unlimited scope of legislative discretion and power, and asserted what must *upon principle be regarded as the just and reasonable doctrine*, that the cost of a local improvement can be assessed upon particular property *only to the extent that it is specially and peculiarly benefited; and since the excess beyond that is a benefit to the municipality at large, it must be borne by the general treasury*."

It is said that the judgment below is not in accord with the decision of the Supreme Court of Ohio in *Cleveland City* v. *Wick*, 18 Ohio St. 303, 310. But that is a mistake. That case only decided that the owner whose property was taken for a public improvement could not have his abutting property exempt from its due proportion of an assessment made to cover the expense incurred in making such improvement; that his liability in that regard was not affected by the fact that he was entitled to receive compensation for his property actually

taken for the improvement without deduction on account of benefits to his other property. That the decision covered no other point is shown by the following extract from the opinion of the court: "The mischief which existed under the old constitution was, that the benefits which were common to his neighbors, without charge, were deducted from the price paid to the owner of land taken. The evil might well be denominated inequality of benefits and burdens among adjoining landowners. You paid for the owner's land in privileges, and left him still liable, equally with his neighbors whose lands were untaken, to any and all local assessments that might afterwards be imposed. This was unequal, and therefore deemed unjust. Experience proved, moreover, that it led to much abuse of the power of condemnation. A full remedy is to be found for these evils in the provision in question, without at all making it to interfere with the power of assessment. Construed thus, it is in perfect accordance with the leading principle of taxation in the new constitution — uniformity and equality of burdens. It simply guarantees to the owner of land condemned a full price. When that is paid, he stands on a perfect equality with all other owners of adjoining lands, equally liable, as he ought to be, to be taxed upon his other lands with them. He has the full price of his land in his pocket, and is an equal participant with them in benefits to adjoining lands. To throw the whole burden upon the others, in such a case, would be to do them the precise injustice which was done to him under the old constitution. To do so, would be to avoid one evil only to run into another. It would be to avoid the evil of withholding from him a full and fair price for his lands, only to run into the equal evil of paying him two prices for it, the second price being at the expense of his neighbors."

If the principles announced by the authorities above cited be applied to the present case, the result must be an affirmance of the judgment.

We have seen that, by the Revised Statutes of Ohio relating to assessments, the Village of Norwood was authorized to place the cost and expense attending the condemnation of the plaintiff's land for a public street on the general tax list of the

corporation, section 2263 ; but if the Village declined to adopt that course, it was required by section 2264 to assess such cost and expense "on the abutting and such adjacent and contiguous or other benefited lots and lands in the corporation, *either* in proportion to the benefits which may result from the improvement *or* according to the value of the property assessed, *or* by *the front foot* of the property bounding and abutting upon the improvement;" while by section 2271, whenever any street or avenue was opened, extended, straightened or widened, the special assessment for the cost and expense, or any part thereof, "shall be assessed only on the lots and lands bounding and abutting on such part or parts of said street or avenue so improved, and shall include of such lots and lands only to a fair average depth of lots in the neighborhood." It thus appears that the statute authorizes a special assessment upon the bounding and abutting property by the front foot for the entire cost and expense of the improvement, without taking special benefits into account. And that was the method pursued by the Village of Norwood. The corporation manifestly proceeded upon the theory that the abutting property could be made to bear the whole cost of the improvement, whether such property was benefited or not to the extent of such cost.

It is said that a court of equity ought not to interpose to prevent the enforcement of the assessment in question, because the plaintiff did not show nor offer to show by proof that the amount assessed upon her property was in excess of the special benefits accruing to it by reason of the opening of the street. This suggestion implies that if the proof had showed an excess of cost incurred in opening the street over the special benefits accruing to the abutting property, a decree might properly have been made enjoining the assessment to the extent simply that such cost exceeded the benefits. We do not concur in this view. As the pleadings show, the Village proceeded upon the theory, justified by the words of the statute, that the entire cost incurred in opening the street, including the value of the property appropriated, could, when the assessment was by the front foot, be put upon the

abutting property, irrespective of special benefits. The assessment was by the front foot and for a specific sum representing such cost, and that sum could not have been reduced under the ordinance of the Village even if proof had been made that the costs and expenses assessed upon the abutting property exceeded the special benefits. The assessment was in itself an illegal one because it rested upon a basis that excluded any consideration of benefits. A decree enjoining the whole assessment was therefore the only appropriate one.

Nor is the present case controlled by the general principle announced in many cases that a court of equity will not relieve a party against an assessment for taxation unless he tenders or offers to pay what he admits or what is seen to be due. That rule is thus stated in *National Bank* v. *Kimball*, 103 U. S. 732, 733: "We have announced more than once that it is the established rule of this court that no one can be permitted to go into a court of equity to enjoin the collection of a tax, until he has shown himself entitled to the aid of the court by paying so much of the tax assessed against him as it can be *plainly seen he ought to pay;* that he shall not be permitted, because his tax is in excess of what is just and lawful, to screen himself from paying any tax at all until the precise amount which he ought to pay is ascertained by a court of equity; and that the owner of property liable to taxation is bound to contribute his lawful share to the current expenses of government, and cannot throw that share on others while he engages in an expensive and protracted litigation to ascertain that the amount which he is assessed is or is not a few dollars more than it ought to be. But that before he asks this exact and scrupulous justice, he must first do equity by paying so much as it is *clear he ought to pay*, and contest and delay only the remainder. *State Railroad Tax cases*, 92 U. S. 575." The same principle was announced in *Northern Pacific Railroad* v. *Clark*, 153 U. S. 252, 272.

In *Cummings* v. *National Bank*, 101 U. S. 153, 157, which was the case of an injunction against the enforcement in Ohio of an illegal assessment upon the shares of stock of a national bank, this court, after observing that the bank held a trust

relation that authorized a court of equity to see that it was protected in the exercise of the duties appertaining to it, said : " But the statute of the State expressly declares that suits may be brought to enjoin the illegal levy of taxes and assessments, or the collection of them. § 5848 of the Revised Statutes of Ohio, 1880 ; vol. liii, Laws of Ohio, 178, §§ 1, 2. And though we have repeatedly decided in this court that the statute of a State cannot control the mode of procedure in equity cases in Federal courts, nor deprive them of their separate equity jurisdiction, we have also held that, where a statute of a State created a new right or provided a new remedy, the Federal courts will enforce that right either on the common law or equity side of its docket, as the nature of the new right or new remedy requires. *Van Norden* v. *Morton*, 99 U. S. 378. Here there can be no doubt that the remedy by injunction against an illegal tax, expressly granted by the statute, is to be enforced, and can only be appropriately enforced, on the equity side of the court." Again : " Independently of this statute, however, we are of opinion that when a *rule* or *system of valuation* is adopted by those whose duty it is to make the assessment, which is designed to operate unequally and to violate a fundamental principle of the constitution, and when this rule is applied not solely to one individual, but to a large class of individuals or corporations, that equity may properly interfere to restrain the operation of this unconstitutional exercise of power." These observations are pertinent to the question of the power and duty of a court of equity to interfere for the plaintiff's relief. The present case is one of illegal assessment under a *rule or system* which, as we have stated, violated the constitution, in that the entire cost of the street improvement was imposed upon the abutting property, by the front foot, without any reference to special benefits.

Mr. High, in his Treatise on Injunctions, says that no principle is more firmly established than that requiring a taxpayer, who seeks the aid of an injunction against the enforcement or collection of a tax, first to pay or tender the amount which is conceded to be legally and properly due, or which is

plainly seen to be due. But he also says: "It is held, however, that the general rule requiring payment or tender of the amount actually due as a condition to equitable relief against the illegal portion of the tax, has no application to a case where the entire tax fails by reason of an illegal assessment. And in such case an injunction is proper without payment or tender of any portion of the tax, since it is impossible for the court to determine what portion is actually due, there being no valid or legal tax assessed."

The present case is not one in which — as in most of the cases brought to enjoin the collection of taxes or the enforcement of special assessments — it can be plainly or clearly seen, from the showing made by the pleadings, that a particular amount, if no more, is due from the plaintiff, and which amount should be paid or tendered before equity would interfere. It is rather a case in which the entire assessment is illegal. In such a case it was not necessary to tender, as a condition of relief being granted to the plaintiff, any sum as representing what she supposed, or might guess, or was willing to concede, was the excess of cost over any benefits accruing to the property. She was entitled, without making such a tender, to ask a court of equity to enjoin the enforcement of a *rule* of assessment that infringed upon her constitutional rights. In our judgment the Circuit Court properly enjoined the enforcement of the assessment as it was, without going into proofs as to the excess of the cost of opening the street over special benefits.

It should be observed that the decree did not relieve the abutting property from liability for such amount as could be properly assessed against it. Its legal effect, as we now adjudge, was only to prevent the enforcement of the particular assessment in question. It left the Village, in its discretion, to take such steps as were within its power to take, either under existing statutes, or under any authority that might thereafter be conferred upon it, to make a new assessment upon the plaintiff's abutting property for so much of the expense of opening the street as was found upon due and proper inquiry to be equal to the special benefits accruing to

the property.   By the decree rendered the court avoided the performance of functions appertaining to an assessing tribunal or body, and left the subject under the control of the local authorities designated by the State.   Such a decree was more appropriate than one enjoining the assessment to such extent as, in the judgment of the Circuit Court, the cost of the improvement exceeded the special benefits.   The decree does not prevent the Village, if it has or obtains power to that end, from proceeding to make an assessment in conformity with the view indicated in this opinion, namely : That while abutting property may be specially assessed on account of the expense attending the opening of a public street in front of it, such assessment must be measured or limited by the special benefits accruing to it, that is, by benefits that are not shared by the general public ; and that taxation of the abutting property for any substantial excess of such expense over special benefits will, to the extent of such excess, be a taking of private property for public use without compensation.

It has been suggested that what has been said by us is not consistent with our decision in *Parsons* v. *District of Columbia*, 170 U. S. 45, 52, 56.   But this is an error.   That was the case of a special assessment against land in the District of Columbia, belonging to the plaintiff Parsons, as a water main tax, or assessment for laying a water main in the street on which the land abutted.   The work was done under the authority of an act of Congress establishing a *comprehensive system for the District*, and regulating the supply of water and the erection and maintenance of reservoirs and water mains.   This court decided that "it was competent for Congress to create a *general system* to store water and furnish it to the inhabitants of the District, and to prescribe the amount of the assessment and the method of its collection; and that the plaintiff in error cannot be heard to complain that he was not notified of the creation of such a system or consulted as to the probable cost thereof.   He is presumed to have notice of these general laws regulating such matters.   The power conferred upon the commissioners was, not to make assessments upon abutting properties, nor to give notice to the prop-

erty owners of such assessments, but to determine the question of the propriety and necessity of laying water mains and water pipes, and of erecting fire plugs and hydrants, and their *bona fide* exercise of such power cannot be reviewed by the courts." One of the points in the case was presented by the contention that "the assessment exceeded the actual cost of the work." But that objection, the court said, overlooked "the fact that the laying of this main was part of the *water system,* and that the assessment prescribed was not merely to put down the pipes, *but to raise a fund to keep the system in efficient repair.* The moneys raised beyond the expense of laying the pipe are not paid into the general treasury of the District, but are set aside to maintain and repair the system; and there is no such *disproportion between the amount assessed and the actual cost as to show any abuse of legislative power.* A similar objection was disposed of by the Supreme Judicial Court of Massachusetts in the case of *Leominster* v. *Conant,* 139 Mass. 384. In that case the validity of an assessment for a sewer was denied because the amount of the assessment exceeded the cost of the sewer; but the court held that the legislation in question had created a sewer system, and that it was lawful to make assessments by a uniform rate which had been determined upon for the sewerage territory." If the cost of laying the water mains in question in that case had exceeded the value of the property specially assessed, or had been in excess of any benefits received by that property, a different question would have been presented.

Nor do we think that the present case is necessarily controlled by the decision in *Spencer* v. *Merchant,* 125 U. S. 345, 351, 357. That case came here upon writ of error to the highest court of New York. It related to an assessment, by legislative enactment, upon certain isolated parcels of land, of a named aggregate amount which remained unpaid of the cost of a street improvement. In reference to the statute, the validity of which was questioned, the court said : "By the statute of 1881 a sum equal to so much of the original assessment as remained unpaid, adding a proportional part of the expenses of making that assessment, and interest since, was

ordered by the legislature to be levied and equitably appor-
tioned by the supervisors of the county upon and among these
lots, after public notice to all parties interested to appear and
be heard upon the question of such apportionment; and that
sum was levied and assessed accordingly upon these lots, one
of which was owned by the plaintiff. The question submitted
to the Supreme Court of the State was whether this assess-
ment on the plaintiff's lot was valid. He contended that the
statute of 1881 was unconstitutional and void, because it was
an attempt by the legislature to validate a void assessment,
without giving the owners of the lands assessed an opportunity
to be heard upon the whole amount of the assessment." Again :
" The statute of 1881 afforded to the owners notice and hear-
ing upon the question of the equitable apportionment among
them of the sum directed to be levied upon all of them, and
thus enabled them to contest the constitutionality of the
statute ; and that was all the notice and hearing to which
they were entitled." The point raised in that case — the only
point in judgment — was one relating to proper notice to the
owners of the property assessed, in order that they might be
heard upon the question of the equitable apportionment of
the sum directed to be levied upon all of them. This appears
from both the opinion and the dissenting opinion in that
case.

We have considered the question presented for our deter-
mination with reference only to the provisions of the National
Constitution. But we are also of opinion that, under any
view of that question different from the one taken in this
opinion, the requirement of the constitution of Ohio that
compensation be made for private property taken for public
use, and that such compensation must be assessed " without
deduction for benefits to any property of the owner," would
be of little practical value if, upon the opening of a public
street through private property, the abutting property of the
owner, whose land was taken for the street, can, under legisla-
tive authority, be assessed not only for such amount as will be
equal to the benefits received, but for such additional amount
as will meet the excess of expense over benefits.

*The judgment of the Circuit Court must be affirmed, upon
the ground that the assessment against the plaintiff's abut-
ting property was under a rule which excluded any inquiry
as to special benefits, and the necessary operation of which
was, to the extent of the excess of the cost of opening the
street in question over any special benefits accruing to the
abutting property therefrom, to take private property for
public use without compensation; and it is so ordered.*

MR. JUSTICE BREWER dissenting.

I dissent from the opinion and judgment of the court in this
case and for these reasons:

First. The taking of land for a highway or other public
uses is a public improvement, the cost of which, under the
constitution of Ohio, may be charged against the property
benefited. *Cleveland* v. *Wick*, 18 Ohio St. 304.

Second. Equally true is this under the Constitution of the
United States. *Shoemaker* v. *United States*, 147 U. S. 282, 302;
*Bauman* v. *Ross*, 167 U. S. 548.

Third. The cost of this improvement was settled in judicial
proceedings to which the defendant in error was a party, and
having received the amount of the award she is estopped to
deny that the cost was properly ascertained.

Fourth. A public improvement having been made, it is,
beyond question, a legislative function, (and a common coun-
cil duly authorized, as in this case, has legislative powers,) to
determine the area benefited by such improvements, and the
legislative determination is conclusive. *Spencer* v. *Merchant*,
100 N. Y. 585, in which the court said:

" The act of 1881 determines absolutely and conclusively the
amount of the tax to be raised, and the property to be assessed,
and upon which it is to be apportioned. Each of these things
was within the power of the legislature, whose action cannot
be reviewed in the courts upon the ground that it acted un-
justly or without appropriate and adequate reasons. . . . By
the act of 1881, the legislature imposes the unpaid portion
of the cost and expense, with the interest thereon, upon that
portion of the property benefited which has thus far borne

none of the burden. In so doing, it necessarily determines two things, viz., the amount to be realized, and the property specially benefited by the expenditure of that amount. The lands might have been benefited by the improvement, and so the legislative determination that they were, and to what amount or proportion of the cost, even if it may have been mistakenly unjust, is not open to our review. The question of special benefit and the property to which it extends is of necessity a question of fact, and when the legislature determines it in a case within its general power, its decision must of course be final."

*Same Case*, 125 U. S. 345, 355, in which the judgment of the Court of Appeals of the State of New York was affirmed, and in which this court said: "The legislature, in the exercise of its power of taxation, has the right to direct the whole or a part of the expense of a public improvement, such as the laying out, grading or repairing of a street, to be assessed upon the owners of lands benefited thereby; and the determination of the territorial district which should be taxed for a local improvement is within the province of legislative discretion. *Willard* v. *Presbury*, 14 Wall. 676; *Davidson* v. *New Orleans*, 96 U. S. 97; *Mobile County* v. *Kimball*, 102 U. S. 691, 703, 704; *Hagar* v. *Reclamation District*, 111 U. S. 701."

*Williams* v. *Eggleston*, 170 U. S. 304, 311, in which this court declared: "Neither can it be doubted that, if the state constitution does not prohibit, the legislature, speaking generally, may create a new taxing district, determine what territory shall belong to such district and what property shall be considered as benefited by a proposed improvement."

*Parsons* v. *District of Columbia*, 170 U. S. 45, in which this court sustained an act of Congress in respect to the District of Columbia, not only determining the area benefited by a public improvement, to wit, the ground fronting on the street in which the improvement was made, but also assessing the cost of such improvement at a specified rate, to wit, $1.25 per front foot on such area.

In this case we quoted approvingly from Dillon's Municipal

Corporations, 4th edition, volume 2, section 752, in reference to this matter of assessment, (p. 56): "Whether the expense of making such improvements shall be paid out of the general treasury, or be assessed upon the abutting property or other property specially benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefited, or alone upon the abutters, according to frontage or according to the area of their lots, is, according to the present weight of authority, considered to be a question of legislative expediency."

In the case at bar the question of apportionment is not important because the party charged owned all of the land within the area described, all of the land abutting upon the improvement. The rule would be the same if one hundred different lots belonging to as many different parties faced on the new street.

The legislative act charging the entire cost of an improvement upon certain described property is a legislative determination that the property described constitutes the area benefited, and also that it is benefited to the extent of such cost. It is unnecessary to inquire how far courts might be justified in interfering in a case in which it appeared that the legislature had attempted to cast the burden of a public improvement on property remote therefrom and obviously in no way benefited thereby, for here the property charged with the burden of the improvement is that abutting upon such improvement, the property *prima facie* benefited thereby, and the authorities which I have cited declare that it is within the legislative power to determine the area of the property benefited and the extent to which it is benefited. It seems to me strange to suggest that an act of the legislature or an ordinance of a city casting, for instance, the cost of a sewer, or sidewalk in a street, upon all the abutting property, is invalid unless it provides for a judicial inquiry whether such abutting property is in fact benefited, and to the full cost of the improvement, or whether other property might not also be to some degree benefited, and therefore chargeable with part of the cost.

Again, it is a maxim in equity that he who seeks equity must do equity, and as applied to proceedings to restrain the collection of taxes, that the party invoking the aid of a court of equity must allege and prove payment, or an offer to pay such portion of the taxes or assessment as is properly chargeable upon the property. This proposition has been iterated and reiterated in many cases. In *State Railroad Tax cases*, 92 U. S. 575, 617, it was laid down "as a rule to govern the courts of the United States in their action in such cases." Further, the mere fact that tax proceedings are illegal has never been held sufficient to justify relief in equity. These propositions have been uniformly and consistently followed. See among late cases *Northern Pacific Railroad* v. *Clark*, 153 U. S. 252, 272. There is nothing in *Cummings* v. *National Bank*, 101 U. S. 153, 163, in conflict with the foregoing propositions. In that case it appeared that the local assessors of Lucas County, in which the bank was situated, agreed upon a rule of assessment by which money or invested capital was assessed at six tenths of its value, while the shares of national banks were assessed at their full cash value. It was held that an unequal rule of assessment having been adopted by the assessors, and that rule " applied not solely to one individual, but to a large class of individuals or corporations," equity might properly interfere. But in that case the bank had paid to the county treasurer the tax which it ought to have paid, as shown by the closing words of the opinion of the court: "The complainant having paid to the defendant, or into the Circuit Court for his use, the tax which was its true share of the public burden, the decree of the Circuit Court enjoining the collection of the remainder is affirmed." If that creates an exception to the general equity rules in respect to tax proceedings, I am unable to perceive it.

Here the plaintiff does not allege that her property was not benefited by the improvement and to the amount of the full cost thereof; does not allege any payment or offer to pay the amount properly to be charged upon it for the benefits received, or even express a willingness to pay what the courts shall determine ought to be paid. On the contrary,

so far as the record discloses, either by the bill or her testimony, her property may have been enhanced in value ten times the cost of the condemnation. Neither is it charged that any other property was benefited in the slightest degree. It is well to quote all that is said in the bill in this respect:

"Your complainant complains of the defendant corporation that the said corporation, through its officers, its council, clerk and mayor, undertook and has undertaken to assess back upon this plaintiff's 300 feet upon either side of the said strip so taken, not only the said two thousand dollars, the amount adjudged to this plaintiff as the value of her property so taken, but also counsel fees, expenses of the suit, expenses and fees of expert witnesses, and other costs, fees and expenses to this complainant unknown, and has proceeded to assess for opening and extending the said Ivenhoe street or avenue for the 300 feet upon each side upon her premises, making 600 feet in all of frontage upon the said strip so condemned by the defendant corporation, the sum of $2218.58, payable in instalments, with interest at six per cent, the first instalment being $354.97 and the last or tenth instalment $235.17, lessening the same from year to year in an amount of about $13 per annum.

"That is to say, the said defendant corporation has undertaken to take 300 by 50 feet of this complainant's property, and, fixing the valuation upon it by proceedings at law, now undertakes to assess upon the complainant's adjacent property, 300 feet upon each side, the said $2000, the value of the same as adjudged by the court in the said condemnation proceedings, with all of the costs incidental thereto, including counsel and witness fees, so that in effect the property of this complainant has been taken and is sought to be taken by the defendant corporation for the uses of itself and the general public without any compensation in fact to the complainant therefor, but at an actual expense and outlay in addition — that is to say, the corporation purposes by assessment to make this complainant not only pay for her own property taken for the benefit of the defendant, but also to pay the costs of so taking it without compensation.

"Wherefore she invokes her remedy given her by statute by injunction. She avers that the said seizure and taking of her said property and the pretended condemnation of the same and assessment of the same with added costs back upon her own property for the benefit of the defendant corporation and the general public is a seizure of her property without compensation; not only that, but at costs to her besides, in that the defendants have undertaken to make her pay for the taking of her property without a compensation in addition to the value of the property, and that she is without remedy and powerless unless she may have and invoke the equitable interference, as the statute authorizes her, of this honorable court."

The testimony is equally silent as to the matter of damages and benefits. There is not only no averment, but not even a suggestion, that any other property than that abutting on the proposed improvement, and belonging to plaintiff, is in the slightest degree benefited thereby. Nor is there an averment or a suggestion that her property, thus improved by the opening of a street, has not been raised in value far above the cost of improvement. So that a legislative act charging the cost of an improvement in laying out a street, (and the same rule obtains if it was the grading, macadamizing or paving the street,) upon the property abutting thereon, is adjudged not only not conclusive that such abutting property is benefited to the full cost thereof, but further, that it is not even *prima facie* evidence thereof, and that before such an assessment can be sustained it must be shown, not simply that the legislative body has fixed the area of the taxing district, but also that, by suitable judicial inquiry, it has been established that such taxing district is benefited to the full amount of the cost of the improvement, and also that no other property is likewise benefited. The suggestion that such an assessment be declared void because the rule of assessment is erroneous, implies that it is *prima facie* erroneous to cast upon property abutting upon an improvement the cost thereof; that a legislative act casting upon such abutting property the full cost of an improvement, is *prima facie* void;

that, being *prima facie* void, the owner of any property so abutting on the improvement may obtain a decree of a court of equity cancelling *in toto* the assessment without denying that his property is benefited by the improvement, or paying, or offering to pay, or expressing a willingness to pay, any sum which may be a legitimate charge upon the property for the value of the benefit to it by such improvement.

In this case no tender was made of any sum, no offer to pay the amount properly chargeable for benefits, there was no allegation or testimony that the legislative judgment as to the area benefited, or the amount of the benefit was incorrect, or that other property was also benefited, and the opinion goes to the extent of holding that the legislative determination is not only not conclusive but also is not even *prima facie* sufficient, and that in all cases there must be a judicial inquiry as to the area in fact benefited.   We have often held the contrary, and I think should adhere to those oft-repeated rulings.

MR. JUSTICE GRAY and MR. JUSTICE SHIRAS also dissented.