tory grounds. This seems to be hinted at in the case of *Snyder v. Board of Awards,* 94 O. S., p. 342. But the act provides (Section 1465-91) that the board is not bound "by any technical and formal rules of procedure." And in our opinion the claimant should not be so bound, if he can be said fairly to be entitled to proceed along any particular line. If there is any question about the views heretofore expressed then there should be a requirement or rule of the board that the board, on the filing of a petition for a re-hearing, shall vacate its former order, renew such order or finding if the re-hearing is denied, or make another proper order, if allowed. In no event should a claimant be required or allowed to imperil his right of appeal in exercising his right to ask the board for a re-hearing.

The motion, therefore, to dismiss this case is hereby overruled, and the entry handed to the court by counsel in pursuance of the making of such motion sustaining the same, will not be approved.

---

### PRESUMPTION AS TO A STREET ASSESSMENT.

Court of Insolvency of Hamilton County.

CATHERINE FUNKE ET AL V. CITY OF CINCINNATI.

Decided, May, 1918.

*Assessments—For a Street Improvement Levied on the Benefit Plan— Presumption that it was Correctly Levied Arises, When—Discretion as to the Plan Adopted Not Open to Review—Benefit and Front Foot Plan of Assessment Can Not be Commingled.*

A street assessment levied on the benefit plan will be presumed to have been correctly levied where the report of the estimating board was confirmed without exception; and abutting owners seeking a reduction of the assessment as to their lots on the ground that it should have been laid by the front foot plan will not be heard.

*Fyffe Chambers,* for plaintiffs.

*Saul Zielonka,* City Solicitor, and *Clifford Cordes,* Assistant City Solicitor, contra.

KELLEY, J.

The several parties plaintiff in this cause in substance complain that the defendant municipality attempted to make an assessment for the improvement of Exeter street under the benefit plan, but when the assessment was completed it was in fact a front foot assessment, and that because of that their property was assessed at the rate of $4.01 per front foot when it should have been assessed at $3.40 per front foot, and to that extent the assessments exceed the benefits. The answer of the city avers and in detail sets out the various steps they took, which it is alleged was in accordance with the statute in such cases made and provided, and that when the estimating board made their report fixing the proportion of the aggregate amount of the assessment upon each of the several lots plaintiffs made no objection thereto, and that thereupon the report was confirmed and the assessment levied accordingly.

The evidence disclosed that the improvement extended from McLean to Western avenue, one block; that sixteen lots fronting on both sides of Exeter street were the same width in rear as in front and aggregated 663 feet, and that these lots were assessed in amounts which would equal $4.01 per front foot of each lot, and that five other lots, aggregating 242.79 feet, were assessed at various amounts. The rear of two of these lots abuts on the improvement and two on the side and one abuts on the improvement 75.46 feet front while its rear is only about 5 feet in width. The sixteen lots were of substantially the same value per front foot and were all equally benefited, while the irregularly shaped lots and those abutting on the rear were each of different value and each separately benefited.

The statutes authorize assessments to be made by three methods, viz.: 1st, by a percentage of the tax value; 2d, by the benefit plan; 3d, by the foot front (Section 3812, General Code). The authorities are uniform that whichever plan the municipality adopts, such discretion is not subject to a review by the courts. The authorities are equally uniform that when the municipality exercises its discretion under the statute and adopts one plan, it can not levy an assessment in part according to bene-

fits and in part by the foot front, nor can one method be used under the guise of another method. And it is claimed that the effect of the assessments in this case violates the rules referred to, and that the entire assessment should be set aside, or, if not set aside, that it be corrected to the end that each foot of the plaintiffs' property herein be assessed $3.40 instead of $4.01, the former being the correct amount in the event that the foot front plan had been pursued.

If all the lots were of the same or substantially the same value and character, and of the same or substantially the same width in rear as in front, there would be merit in the contention, but it could not be said that a lot fronting 75.46 feet on the improvement that only had a width of 5 feet in the rear received the same benefits as if it was the same depth in rear as in front, like the sixteen lots referred to, nor could it be said that the lots of Catherine Wahoff and Catherine Hempelman, each fronting 35 feet on Western avenue and only a portion of their rear bounding on the improvement, could be benefited to the extent of any of the sixteen lots.

While the law of assessments exacts uniformity and that the burdens must be distributed equally, yet the Supreme Court of the United States, in *Norwood* v. *Baker,* 172 U. S., 269 (43 L. Ed., 443; 19 Sup. Ct., 187), says, "exact equality is not always attainable," and this is particularly applicable to a municipality like Cincinnati, where the topography of the ground is so varied and unequal. It was because of this and to meet such difficulties the Legislature of the state authorized municipalities in their discretion to adopt either one of three methods.

"It is a fundamental rule that an assessment, or tax for local benefits should be distributed among and imposed upon all equally standing in like relation." 5 McQuillan, Municipal Corporation, p. 4339; *Detroit* v. *Daley,* 68 Mich., 503.

Under the evidence in this case, the court is of the opinion that the sixteen lots heretofore referred to were in one class and stood in like relation and received the same benefits in proportion to each other, and that each of the other five lots abutting

and bounding on the improvement were each in a separate and distinct class to each other and also to the sixteen lots, and no one class received the same benefits as the other.   In other words, there were six different classes of lots bounding and abutting on this improvement and to each class different benefits accrued. Had the foot front method of assessment been adopted and carried out and the assessment been made at a uniform rate per front foot on the several lots abutting on this improvement, each of the owners of the five irregularly shaped lots would have been entitled to relief from an assessment of that character.

An assessment will be presumed to have been apportioned according to law.   *Anderson* v. *Bitzler,* 20 Ky. L. Rep., 1450.

The action of municipal authorities making an assessment comes within the general maxim that public officers are presumed to have rightly acted until the contrary is clearly made to appear.   5 McQuillan, Municipal Corporation, p. 4506.

Holding these views under the evidence and the authorities, the court is of the opinion the assessment as made should be sustained, the restraining order heretofore issued vacated, and the petition dismissed at plaintiffs' costs.