## In re ELY AVE. IN CITY OF NEW YORK.

(Supreme Court, Special Term, Kings County.   December 14, 1914.)

1. EMINENT DOMAIN (§ 47*)—STREETS—ACQUISITION OF FEE—CONDEMNATION.
   Where a street has been used as such for 30 or 40 years, and for 20 years the city has had exclusive control of it for all street purposes, without the assertion of any claim of ownership except in subordination to the public easement, an application to condemn such parts as had not previously been acquired in fee, to which no person had made any claim, should not be granted, especially where the real purpose was to use the street for an elevated railroad.

   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 107–120;  Dec. Dig. § 47.*]

2. EMINENT DOMAIN (§ 119*)—COMPENSATION—ELEVATED RAILROADS—SUBWAY—STREET EASEMENT—"ADDITIONAL BURDEN."
   A subway under a street, or an elevated railroad over it, serve no street purpose but a municipal use, and form an added easement or burden on the street and adjacent property, which cannot be placed thereon without additional compensation to the abutting owner, whether he owns the fee in the street or not.

   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 304–314;. Dec. Dig. § 119.*

   For other definitions, see Words and Phrases, Second Series, Additional Burden.]

3. MUNICIPAL CORPORATIONS (§ 649*)—STREETS—ACQUISITION OF TITLE—NATURE OF PROCEEDING.
   A proceeding to acquire title to the fee of a street, so that it may be closed and contracted to the extent necessary for an elevated railroad, cannot be maintained under the guise of acquiring title to the lands for the opening and extending of the street.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1423;  Dec. Dig. § 649.*]

4. MUNICIPAL CORPORATIONS (§ 508*) — SPECIAL ASSESSMENTS — AREA — REVIEW.
   Where the taking of land for street purposes is lawful, the court cannot review the action of the board of estimate in fixing the area of assessment, unless the property assessed be not actually benefited by the taking.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1181, 1182;  Dec. Dig. § 508.*]

Application by the City of New York to acquire title to lands required for the opening and extending of Ely Avenue.   Application for the appointment of commissioners of estimate and assessment denied.

Frank L. Polk, Corp. Counsel, of New York City (Joel J. Squier and James R. Fitzgerald, both of New York City, of counsel), for applicant.

John Larkin, of New York City, for respondents Ayer and others.
August G. Klages, of Long Island City, for respondent Klages.

BENEDICT, J.   This application for the appointment of commissioners in a street opening proceeding is resisted by interested prop-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

erty owners upon the ground, first, that the proceeding is unnecessary, because the street was long ago ceded to the city as a highway; secondly, that the proceeding is evasive, in that it is not, in fact, being taken for the real purpose sought to be accomplished; and, thirdly, that the resolution imposing the assessment is void, because a large part of the area will receive no benefit from the taking. The following facts seem to be conceded:

By the title to the proceeding it appears that the city of New York seeks to acquire title "where the same has not been heretofore acquired for the same purpose in fee, to the lands, tenements, and hereditaments required for the opening and extending of Ely avenue, from Jackson avenue to Nott avenue, in the First ward, borough of Queens, city of New York." It appears that the property affected is less than three short blocks in length; that the street known as Ely avenue was laid down, under its former name of President street, as a street 60 feet in width upon a map of the Hunter and Van Alst Farms, made by Peter Van Alst, dated 1861, and filed August 17, 1861, as Map No. 17; again it was laid down under its present name as a street 80 feet in width upon a map of the Hunter, Van Alst, and De Bevoise Farms, made by Peter Van Alst, city surveyor, for the trustees of Union College, dated January 1, 1874, filed June 11, 1875; and again it was shown as an 80-foot street upon the commissioner's map of Long Island City, filed in the office of the secretary of state on April 25, 1873. It is evident by comparison of the first and second maps that the increase in the width of the street from 60 to 80 feet was made by the addition of 10 feet on either side of the street and the consequent reduction of the size of the lots abutting thereon.

There is proof from which it may be inferred for the purposes of this motion that the city has maintained the street as an 80-foot street, and the public has so used it, for nearly 40 years. The street was paved about 20 years ago, and the sidewalks were, at that time, changed to correspond with other sidewalks laid in accordance with the regulations of Long Island City for 80-foot streets. There is proof that the street has been controlled and patrolled, sewered, paved, lighted by electricity and gas, and has had fire hydrants, all maintained and repaired under the direction of the city of New York and its predecessor since 1888, and has been used as a highway since 1871. In one instance (that of damage parcel 3) a frame dwelling house formerly extended out into it, but was moved back about 20 years ago, when the pavement was laid, and the city of Long Island City paid to the owner of the premises $1,000 for the damage caused to his building and for his right in the street.

The draft damage map annexed to the petition in this proceeding shows the lines of the street to be acquired to be the same as shown by the second Van Alst map and the commissioner's map above mentioned. It appears further by the petition that the area sought to be acquired in this proceeding comprises 45,924.4 square feet, and that out of this area the city already has title in fee by deed to 43,924.4 square feet, leaving only 2,000 square feet to be acquired in any event,

and the objecting owners contend that these last have been dedicated to and used by the city for street purposes for many years. So far as appears by the record, no one has asserted anything to the contrary; nor does any abutting owner appear to claim title to any part of the area sought to be acquired, except Patrick Coleman, who claims damage parcel 2, a strip 10 feet wide by 75 feet in depth on the northeast corner of Ely avenue and Eleventh street, contiguous to the plot upon which he erected a four-story brick building, which, however, does not cover any part of damage parcel 2. When the plan for building a rapid transit road on Ely avenue was announced about three years ago, Coleman built a small building, one story in height, at the rear of said building and extending into Ely avenue; and this although for more than 20 years before that the street had been treated by him and all the other abutting owners and used by the public as an 80-foot street. Moreover, the city itself does not disclaim its ownership, but seems to rest upon the theory that the official record does not prove the fact of its ownership conclusively, because a deed or deeds which might have conveyed title are unrecorded and cannot be found. It postulates that, because there is no proof before the court to show that this street was ever acquired, therefore the city has a right to maintain this proceeding. Furthermore, to quote from the brief submitted, it contends that:

"The title of this street, as disclosed by the search, is so indefinite and uncertain that the easiest way of disposing of the same (sic) would be to grant the application."

And in support of this proposition is offered an affidavit by the attorney who made an examination of the title for the corporation counsel, which states that:

"The time devoted by him to the examination was far too short to enable him to make a thorough report on title. * * * As far as the examination has been made, it is evident that there is sufficient doubt cast upon the nature of the title, if any, possessed by the city of New York to the street, to warrant the appointment of commissioners for the acquisition of title thereto."

I can hardly believe that such loose practice has obtained a foothold in the office of the corporation counsel, nor that it can have received judicial approval in the past. I shall certainly not be the one to initiate so dangerous a procedure. If it should become established, innumerable proceedings of a similar nature might be instituted in all parts of the city, with a result beyond approximation in expense, time, and trouble, not only to the parties directly affected, but to those within an arbitrary area of assessment.

[1] Where, as in the present case, a street has been used as a highway for 30 or 40 years, and where for 20 years the city has had the exclusive control of it for all street and highway purposes, including its paving, sewering, lighting, cleaning, and policing, without the assertion of any claim of ownership, except in subordination to the public easement, I am unable to perceive any just ground, under ordinary conditions, for disturbing the established rights of the parties interested, viz., the abutting owners, the municipal authorities,

and the public at large. It is possible that some case might be presented which ought to be made an exception to such a rule, but I confess that I have always thought that the exercise of the right of eminent domain for street purposes might well be limited to the acquisition in the case of new streets of a perpetual easement, rather than a fee; and although I recognize that a different method has been allowed by the Legislature, I think it should not be extended to old streets, unless in exceptional cases. Perhaps the present case may serve as an illustration of the basis upon which the desire of the municipal authorities to acquire the fee of a street already in use for many years as a highway rests. It is stated in the opposing affidavits, and not controverted seriously by the city, that the real object of this proceeding is, not the acquisition of the slight fraction, say 4 per centum, of the area of this street, but it is to afford the city the right to cause the erection over this street of an elevated railroad as a part of the rapid transit system of the city. The city's brief says:

"There is no denial of the statement that the street may ultimately be used for an elevated railroad, but it will also be used for street purposes, and in using it for such purpose it is apparent that the complexities of the economic conditions existing and continually arising in a great city demand that the city should acquire the street in fee for street purposes."

[2] If these words mean anything, they mean that an elevated railroad is a street purpose, and such, as all lawyers know, is not the case. In this city, a subway under a street or an elevated railway over it serve, not a street use, but a municipal use, and forms an added easement or burden upon the street and the adjacent property, which cannot be placed upon it without special and additional compensation being made to the abutting owner, whether he own the fee of the bed of the street, or not, although, of course, if he be a mere 'abutter, his right of compensation for the added burden would be less than if he owned the bed in fee. Not only does the city not controvert the assertion that the purpose of this proceeding is to use the street for the building of an elevated railway, but annexed to the city's petition is an affidavit of Mr. Raisman, the senior designing engineer of the Public Service Commission for the First District, in which he states that the part of the rapid transit line which is designed to be constructed along Ely avenue, from Jackson avenue to Nott avenue, is known as "Route No. 50," and that the type of railroad to be built there is that of an elevated railroad, supported by columns placed generally on the curb lines of the said avenue, supporting girders which will carry the track, platforms, and other structures of the railroad, and will be so placed that there will be a clearance or headroom underneath the said girders of not less than 14 feet to the surface of the roadway of said avenue.

[3] In the light shed by this naive admission, the real object of this proceeding becomes evident. The title of the proceeding is thereby shown to be misleading, for, instead of being a proceeding to acquire title to lands "required for the opening and extending of Ely avenue," it in reality becomes a proceeding to acquire title so that Ely avenue may be closed and contracted to the extent which the building

of such a structure as has been described would entail. If in the construction of its system of rapid transit the city finds it necessary to condemn private property for public use, and to acquire easements of light, air, and access appurtenant to such public use, the law has given to it adequate means through action by the Public Service Commission; but those means should be employed, and not avoided.

[4] Little need be said with respect to the third point raised by the objecting owners, viz., that a large part of the area proposed to be assessed would not benefit by the proceeding. If the taking be lawful, the court cannot review the action of the board of estimate in fixing the area of assessment, unless the property assessed be not actually benefited by the taking. Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443. As, however, I have tried to show that the proposed taking is unlawful, the persons sought to be assessed have a clear right to object to such assessment, and they may exercise that right by objecting to the institution of the proceeding, which will, if prosecuted, result in such an illegal assessment.

The application is denied, with $10 costs to each party appearing herein by separate attorney.