Marshall, C. J.
 

 The first matter to challenge onr attention is the claim of the defendants that relator has mistaken his remedy and that mandamus does not lie, because there is an adequate remedy at law. The single authority cited in support of that claim is
 
 Davenport
 
 v.
 
 County of Dodge,
 
 105 U. S., 237, 26 L. Ed., 1018. Chief Justice Waite, in delivering the opinion of the court in that case, declared as a rule of federal procedure that a judgment at law is necessary to support the writ of mandamus to enforce the levy and collection of taxes to pay public improvement bonds issued by the board of county commissioners. If this action had been brought in the federal courts, that decision would be conclusive authority. It is well settled that rules of practice and procedure established for the guidance of federal courts have no binding force upon courts exercising state jurisdiction. It has been settled by a long line of authorities in this state, beginning with
 
 State, ex rel. Robertson,
 
 v.
 
 Board of Education of Perrysburg Township,
 
 27 Ohio St., 96, and extending down to
 
 State, ex rel. Huntington National Bank,
 
 v.
 
 Putnam, Mayor,
 
 121 Ohio St., 109, 167 N. E., 360, a late case, that bonds and other incontestable obligations of any of the political subdivisions of the state may have collection enforced otherwise than by judgment, and that the remedy of mandamus is available to the owner and holder of such obligations where the taxing authorities of such subdivision have refused to levy special assessments or general taxes for the purpose
 
 *186
 
 of procuring funds to pay the same. Other cases in which this has been clearly held are
 
 State
 
 v.
 
 Commissioners,
 
 37 Ohio St., 526;
 
 Brissel
 
 v.
 
 State, ex rel. McCammon,
 
 87 Ohio St., 154, 172, 100 N. É., 348;
 
 State, ex rel. Price, Atty. Genl.,
 
 v.
 
 Huwe,
 
 103 Ohio St., 546, 556, 134 N. E., 456.
 

 It is true that the writ of mandamus can only be awarded against public officials where such officials rest under a clear legal duty. This duty is imposed in Ohio by two recent enactments.
 

 Section 2293-24, General Code, provides: “Bonds or notes issued in anticipation of the levy of special assessments or the collection thereof shall be full general obligations of the issuing subdivision, and for the payment of the principal and interest of same the full faith, credit and revenues of such subdivision shall be pledged. ’ ’
 

 Section 5625-3,: General Code, provides: “The taxing authority of each subdivision and taxing unit shall, subject to the limitations and restrictions of this act, levy such taxes annually as are necessary to pay the interest and sinking fund on and retire at maturity the bonds, notes and certificates of indebtedness of such subdivision and taxing unit * *
 

 Again, it must be admitted that, if the bonds in this case do not constitute legal obligations, neither mandamus nor an action at law may be invoked to enforce their payment. It only remains, therefore, to determine whether they are valid, legal, enforceable obligations. Before entering upon that discussion it must not be overlooked that relator claims that, even if they were not valid obligations when issued, the defendants are estopped from setting up
 
 *187
 
 their illegality, because the bonds are in the hands of innocent holders for value, and were acquired by the present holders before their maturity, without notice of any defects, and that bonds issued by the political subdivisions of the state are entitled to the same protection against equities accorded to other negotiable instruments. This principle has been declared by this court in
 
 State
 
 v.
 
 Commissioners.,
 
 37 Ohio St., 526, in the following language: “A purchaser of such bonds, who has no actual knowledge of any defect in their execution, is not bound to look beyond the findings and record of the commissioners, for the purpose of ascertaining whether conditions precedent to their execution have been performed.”
 

 Another authority on the s,ame point is
 
 State, ex rel. Robertson,
 
 v.
 
 Board of Education, supra,
 
 more particularly the language of the opinion at page 98 of 27 Ohio State.
 

 It has been stated in unmistakable language by this court in
 
 Counterman
 
 v.
 
 Dublin Township,
 
 38 Ohio St., 515, that an unconstitutional law cannot be made the basis of any obligation on the part of any of the subdivisions of the state, that a taxpayer may maintain an action to restrain the collection of a levy for the payment of bonds issued under such act, and that no estoppel is created by the fact that the bonds were issued and the money arising from the sale thereof expended for the purposes stated in the act with the knowledge of the plaintiff, even though the value of the property subject to taxation is thereby enhanced, and even though the improvement authorized by the unconstitutional act would be useful to the citizens of the political subdivision,
 
 *188
 
 and even though the plaintiff did not commence his action to restrain the issue or negotiation of the bonds or the prosecution of the work. The same principle in somewhat milder form was stated in
 
 Wyscaver
 
 v.
 
 Atkinson,
 
 37 Ohio St., 80. This principle is declared upon the incontestible ground that an act of the General Assembly in conflict with the Constitution is a mere nullity, and no one is estopped to assert its invalidity. The principle declared in that case has never been departed from. The relator in this case can therefore only succeed in the event the pertinent portions of Sections 6602-1 to 6602-33c are constitutional.
 

 We will pass for the moment from the discussion of the constitutionality of these sections in general to a discussion of Section 6602-14 in particular. That section provides that, in addition to the regular salary of the county commissioners, they shall receive additional compensation for services in connection with the establishment of sewer districts outside of municipalities. The county commissioners in this particular improvement received a total of $4,427.64. It is claimed that the county commissioners, in determining whether or not there was a necessity for the improvement, and whether or not they should determine to proceed to construct the improvement, were acting in a ^«m-judicial capacity, and that, by reason of their substantial pecuniary interest in creating the district and constructing the improvement, they were so far disqualified as to render the entire proceeding wholly void.
 

 Its constitutionality is challenged as being in violation of Section 16 of Article I of the Ohio Con
 
 *189
 
 stitution, and Section 1 of the Fourteenth Amendment, which contain guarantees of due process of law. The basis of the claims of the defendant is that, in order to receive the fees provided by Section 6602-14, General Code, the commissioners must decide in favor of the improvement, and, further, that there is an inducement to increase rather than to diminish the cost of the improvement, because, in addition to the per diem for the services in determining the necessity for the improvement, the commissioners are allowed a. percentage of the entire cost of installing the improvement.
 

 In support of the claim of unconstitutionality, counsel for defendants cite a singlé authority,
 
 vis., Tumey
 
 v.
 
 Ohio,
 
 273 U. S., 510, 47 S. Ct., 437, 71 L. Ed., 749, 50 A. L. R., 1243. In that case the Supreme Court of the United States held there was a violation of due process, in that the mayor who heard and decided a misdemeanor case adjudged costs against the defendant, in which costs the mayor had a personal interest to the extent of approximately $12 by reason of not being entitled to any fees except in case of judgment against the defendant. In some of the counties of this state there are very elaborate ditch improvements, and the fees to the county commissioners are very substantial sums. In other counties they are relatively small.
 

 It is our purpose to faithfully follow the
 
 Turney case,
 
 in so far as the principles declared in that case can be given application. The board of county commissioners, is an administrative board, but it nevertheless exercises quasi-judicial functions. The proceedings for determining the necessity for sewers,
 
 *190
 
 and the levy of assessments upon property according to. benefits to pay for such improvements, are judicial in character. The board of commissioners exercises only those powers which are conferred upon it by legislation, and the parties who are affected by the proceedings are injured to the same extent as if the same order were made by a regularly constituted court of justice. The net result to property owners must be the same whether accomplished through judicial or g-wasi-judicial authority. At page 522 of 273 U. S., 47 S. Ct., 437, 441, in the
 
 Tumey case,
 
 it is declared by Chief Justice Taft as a general rule that officers acting in a judicial or quasi-judicial capacity are disqualified by their interest in the controversy, and numerous eases are cited in support of that proposition. The opinion then discusses at length the degree and nature of the interest which will disqualify the' judge.
 

 It must be borne in mind that the only legal principle decided by the Supreme Court of the United States in the
 
 Tumey case
 
 was that the mayor was disqualified, and the reversal of the judgment was grounded upon the fact that objection on the ground of the mayor’s disqualification was made at the first opportunity. The attack upon the judgment by Tumey was a direct attack in an error proceeding, and it was not necessary to declare, nor did the Supreme Court in fact declare, that the judgment was void. Immediately following the announcement of the judgment of reversal in the
 
 Tumey case,
 
 numerous cases were brought to this court to interpret the decision of the United States Supreme Court, and to determine whether the Supreme Court of
 
 *191
 
 the United States had declared the judgment in the
 
 Tumey case
 
 void or only voidable. This court, by a divided court, reached the conclusion that the judgment was only declared to be voidable, and that, in other cases where the objection was not timely made, and no error prosecuted on that ground, the objection could not be made for the first time in a court of review; neither was such judgment subject to collateral attack. Error was not prosecuted in those cases to the Supreme Court of the United States, except in a single instance, where a conviction was before a mayor who was compensated by salary instead of being compensated out of costs collected as a part of the judgment of conviction. We therefore have no expression from the Supreme Court of the United States as to whether the later decisions of this court interpreting the Turney decision are correct. The interpretation of this court is, however, in perfect harmony with numerous other decisions which have sought to interpret the Turney decision:
 
 Brown
 
 v.
 
 Kleysteuber, Mayor,
 
 149 Va., 438, 141 S. E., 252;
 
 Commonwealth
 
 v.
 
 Dabbierio,
 
 290 Pa., 174, 138 A., 679;
 
 Bryant
 
 v.
 
 State,
 
 146 Miss., 533, 112 So., 675;
 
 Ex parte Meeks,
 
 (D. C.), 20 F.(2d), 543;
 
 Boyd
 
 v.
 
 State,
 
 (Miss.), 114 So., 353;
 
 Fleming
 
 v.
 
 Greenwood,
 
 (Miss.), 115 So., 221;
 
 Owens
 
 v.
 
 Dancy,
 
 (C. C. A.), 36 F.(2d), 882;
 
 Hill
 
 v.
 
 State,
 
 174 Ark., 886, 298 S. W., 321;
 
 Uihlein
 
 v.
 
 St. Paul,
 
 (C. C. A.), 32 F.(2d), 748.
 

 In
 
 Tari
 
 v.
 
 State,
 
 117 Ohio St., 481, 159 N. E., 594, 57 A. L. R., 284, this court declared that a judgment of conviction before a justice of the peace, who was disqualified by reason of interest, was nevertheless valid, if no objection was made by the defendant at
 
 *192
 
 or before the trial, and that the failure to make the objection in the trial court should be deemed to be a waiver of the disqualification. The reasoning of the opinion in that case need not be repeated at this time. Applying the reasoning of that case, the conclusion must be reached that the order of the board of county commissioners determining the necessity for the improvement, and levying the assessments upon property in payment of the same, in the absence of any objection on the ground of disqualification, must be held to be a valid order.
 

 And this must be more particularly true if it is not made until after bonds based upon the improvement have been negotiated into the hands of innocent holders for value.
 

 We will first discuss this matter upon the theory that the statutes are constitutional. If it be assumed by the defendants in this case that the statutes are constitutional, the only defense made by this record lies in the claim of the abuse of power on the part of the county commissioners in ordering the improvement. As the basis of this claim, it is urged that the improvement not only was of no benefit to the residents outside of the districts created, but that the improvement could be of no possible benefit to them and was even detrimental. Without repeating the facts heretofore stated, it need only be added that it will be difficult to discover or even conceive a more flagrant abuse of power or a more flagrant violation of the trust and confidence .reposed in public officials than the action of the county commissioners in providing for these improvements. No party to this action and no attorney for any party _ contends that these improve
 
 *193
 
 ments could in the slightest measure have promoted the health and safety, or that they could even tend to safeguard the health, of the citizens of Allen county or the city of Lima, or even of the citizens of the townships in which the districts are located, because the lands which comprise the districts were farm lands used almost exclusively for agricultural purposes, and the dwellings were the usual farm homes of agricultural communities. No one is so bold at this time as to say that there was any necessity for the improvement at that time and place. Whatever the issues of fact made by the pleadings, it is not doubted that the purpose of the improvements was to promote the platting and sale of lots. The most that can be said in behalf of the improvement at the time it was made is that the city of Lima might increase in population to the point where these lands would be built upon, and that possibly a sufficient number of dwellings might be constructed to require'water and sewage improvements to guard the inhabitants of the city of Lima, and possibly the inhabitants of the county of Allen outside of the city of Lima, who need protection against the menace of pollution. This court can look upon the improvement in no other light than as a promotion scheme to which public officials have devoted the money of taxpayers. The lands included in both said districts had sufficient natural drainage, and no part of said area was swampy or subject to floods. These facts have been plainly stated, and should be plainly stated, because it is by extreme cases that the soundness of legal propositions as well as the validity of statutes are questioned. While these facts have been plainly stated,
 
 *194
 
 they have not been exaggerated. In fact, it would be difficult to exaggerate them.
 

 This is indeed an extreme case, and the plight of the taxpayers is such as to excite sympathy, but an extreme case cannot be permitted to make bad law.
 

 This case cannot be decided by weighing facts or equities. The county commissioners are not the interested parties. In its final results, the interested parties on the one hand are the innocent holders of the negotiable bonds acquired in due course, and, on the other hand, the taxpayers, who, if not equally interested, have been grossly imposed upon. While, as before stated, the principles of estoppel do not apply, the situation in which the taxpayers find themselves is one created by their own chosen officials and agents. The bondholders are not in any wise at fault, unless it be decided that purchasers of bonds in each instance must at their peril inquire as to the nature of the improvement, and whether there was a real necessity therefor. As the law now stands, and has stood from time immemorial, it is only necessary to inquire whether the law is constitutional and whether the proceedings are regular, the necessity for the improvement being a political question to be determined by the commissioners of the county, or the council of the municipality, as the case may be.
 

 We are asked by the defendants representing the taxpayers to determine that the validity of bonds in the hands of innocent holders depends as a question of fact upon whether the improvement was needed, and upon whether the residents of Allen county outside of the sewer districts utilized the systems of sewerage and water supply. It is
 
 *195
 
 declared in
 
 Board of Commissioners of Hamilton County
 
 v.
 
 Mighels,
 
 7 Ohio St., 109, 119:
 
 “A
 
 county organization is created almost exclusively with a view to the policy of the State at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice. With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general. policy of the State, and are, in fact, but a branch of the general administration of that policy. ’ ’
 

 The county is the unit through which many of the important functions of the government are carried on. The credit of the county must stand behind all public improvements other than those which pertain to the state at large. One part of the county' cannot be separated from another for purposes of taxation. The fact that there may be residents in remote portions of Allen county who . will receive no possible benefit from these improvements, and who are in no apparent danger from those contagions which are usually caused by pollution, cannot stand in the way of a general governmental policy declared by the Legislature in the interest of public health and public welfare. If the law is unwise, it might be subjected to a referendum. If the improvement ordered by the county commissioners is wholly unwarranted it might be enjoined. But, when completed, and county obligations have been issued and purchased in the market those obligations cannot thereafter be questioned.
 
 *196
 
 The question must resolve itself into the single inquiry,
 
 vis,
 
 whether the law which authorizes the action of the county commissioners is a constitutional exercise of legislative power. With the wisdom of the law the courts have no concern. The only judicial inquiry into the constitutionality of a statute involves the question of legislative power, not legislative wisdom. Under the Ohio Constitution, the legislative authority of the General Assembly is circumscribed only by the express limitations of the state and federal Constitutions. In matters of public policy, or, in other words, the police power, it has the same general power with the same limitations.
 
 State Board of Health
 
 v.
 
 City of Greenville,
 
 86 Ohio St., 1, 98 N. E., 1019, Ann Cas., 1913D, 52;
 
 Leonard, Jr.,
 
 v.
 
 State,
 
 100 Ohio St., 305, 127 N. E., 464;
 
 Williams
 
 v.
 
 Scudder,
 
 102 Ohio St., 305, 131 N. E., 481;
 
 Miami County
 
 v.
 
 City of Dayton,
 
 92 Ohio St., 215, 110 N. E., 726;
 
 Chesbrough
 
 v.
 
 Commissioners,
 
 37 Ohio St., 508.
 

 These particular statutes providing for sewer systems and sewer improvements outside of municipalities, to be constructed by county commissioners, and to be paid for by special assessments and general tax levies, have never before been interpreted by this court, but similar statutes have many times been determined to be valid by the courts of other states where it has without exception been held that special assessments to pay for such improvements can be levied according to benefits, and that the credit of the taxing district outside of the assessed district can be pledged for the payment of bonds to provide the money for the construction of the improvement.
 
 Kingman et al.,
 
 
 *197
 

 Petitioners Under Metropolitan Sewerage Act,
 
 153 Mass., 566, 27 N. E., 778, 12 L. R. A., 417;
 
 Dahler
 
 v.
 
 Washington Suburban Sanitary Comm.,
 
 133 Md., 644, 106 A., 10;
 
 Taylorsville Sanitary Dist.
 
 v.
 
 Winslow,
 
 317 Ill., 25, 147 N. E., 401.
 

 A typical case is
 
 Keene
 
 v.
 
 Jefferson County,
 
 135 Ala., 465, 33 So., 435, 438.
 

 To show the potential usefulness of such statutes, and that they hear a substantial relation to the public welfare, we quote from the statement of the Alabama case: “It is shown that about two-thirds of the population of Jefferson county, of more than 100,000 people, live in the two valleys and at the foothills, through which the trunk lines of the sewers are proposed to be run, and that three-fourths in value of all the property in the county is within the area of drainage covered by these two trunk lines of sewer. The system in its beneficial effects, extends to the entire county for the protection of its water courses from pollution, and was intended to meet not only the present needs, but to fulfill in the future, the requirements of sanitation and health in cities and towns, and in all the thickly settled portions of the county.”
 

 It is of course apparent that those facts were wholly different from the facts in the instant case, but they do clearly illustrate how such statutes relate to the public welfare. Another somewhat similar case is that of
 
 Dinneen
 
 v.
 
 Rider,
 
 152 Md., 343, 136 A., 754.
 

 Counsel for the taxpayers have cited one case which is clearly an authority in favor of the bondholders, to wit,
 
 State, ex rel. New Richmond,
 
 v.
 
 Davidson,
 
 114 Wis., 563, 88 N. W., 596, 90 N.
 
 W.,
 
 
 *198
 
 1067, 58 L. R. A., 739. In that case a state tax was levied to pay the expenses of the city of New Richmond incurred in meeting immediate needs arising from the destruction caused by a cyclone which killed and injured many of the inhabitants. The tax levied by the state was justified in that ease because it was necessary to “bury the dead, care for the injured, clear up the debris to prevent disease and pestilence, and to relieve and aid the homeless, destitute, and impoverished.” In the opinion, at page 578 of 114 Wis., 88 N. W., 596, 90 N. W., 1067, 1070, the court quoted from
 
 Brodhead
 
 v.
 
 Milwaukee,
 
 19 Wis., 624, 88 Am. Dec., 711: “To justify a court in declaring a tax void, and arresting proceedings for its collection, the absence of all possible public interest in the purposes for which the funds are raised must be so clear and palpable as to be immediately perceptible to every mind. Claims founded in equity and justice, in the largest sense of those terms, or in gratitude or charity, will support a tax.”
 

 The decisions of our own state, while not dealing with sewer systems outside of municipalities, have frequently dealt with other improvements outside of municipalities, and the same principles must necessarily apply. The power to levy a general tax throughout the county is authorized by Section 7, Article X, of the Ohio Constitution, and is not dependent upon the receipt of direct benefit by the taxpayers of the county or the equal distribution of potential benefits in proportion to the burdens of the tax levied. Cooley on Taxation (4th Ed.), Section 20;
 
 Railroad Co.
 
 v.
 
 Commissioners,
 
 48 Ohio St., 249, 27 N. E., 548;
 
 Miami County
 
 v.
 
 City of Dayton,
 
 
 *199
 
 92 Ohio St., 215, 110 N. E., 726;
 
 State, ex rel. Holtz,
 
 v.
 
 Commissioners of Henry County,
 
 41 Ohio St., 423;
 
 State
 
 v.
 
 Commissioners,
 
 37 Ohio St., 526. The same principle has been declared in
 
 Illinois Central Rd. Co. v. Decatur,
 
 147 U. S., 190, 13 S. Ct., 293, 37 L. Ed., 132.
 

 The construction of water supply systems and storm and sanitary sewer systems by municipalities has long been recognized by the Legislature as a valid exercise of governmental powers in promoting the public health and welfare, by municipalities, and* the same may be said as to a levy of general taxes spread over the entire property of such municipalities, even though the direct benefits were confined to but a small portion of the municipality. This principle has been so often declared and so well settled that citation of authority is unnecessary. It has also been so often held in this state that the entire credit of the county can be pledged to provide the funds for the construction of highways that those authorities need not be discussed.
 

 It is contended by defendants, however, that above do not apply here because in the instant case the improvement is a purely private one. Many authorities have been cited on that proposition, but an examination of them will disclose that in every instance where the taxpayers have prevailed there was an attack upon the improvement itself, and not a defense made to the bonds after they were issued and purchased by innocent holders. It is believed that not a single respectable authority can be found where the purpose was avowedly a public one, and the improvement was completed, and the obligations of the taxing subdivision had been issued to,
 
 *200
 
 and were owned by, innocent holders. The only instances which have been brought to our notice where the ■ taxpayers have successfully defended against bonds were those where the law itself which authorized the improvement was an unconstitutional exercise of legislative power.
 

 It is not seriously contended in the instant case that the proceedings leading up to the improvement and the issuing of bonds were irregular, or that the statutory provisions have not been faithfully met. If any procedural steps have been disregarded, they have been cured by the issuance of bonds containing the necessary recitals of the lawful purposes for which they have been issued, which bonds have therefore become incontestable by reason of. the provisions of Section 2293-37 of the General Code.
 

 Much that is urged in the briefs and arguments of counsel for the defendants concerning the lack of benefit to taxpayers in remote portions of Allen county has no application to this case. Those .principles apply more particularly to special assessments upon property according to benefits. It has been held by the courts of this state, the courts of other states, and the United States Supreme Court, that no special benefit need be shown to accrue to property as the basis for the levy of general taxes.
 
 Railroad Co.
 
 v.
 
 Commissioners,
 
 48 Ohio St., 249, 27 N. E., 548;
 
 Illinois Central Rd. Co.
 
 v.
 
 Decatur,
 
 147 U. S., 190, 13 S. Ct., 293, 37 L. Ed., 132;
 
 St. Louis & S. W. Ry. Co.
 
 v.
 
 Nattin, Tax Collector,
 
 277 U. S., 157, 48 S. Ct., 438, 72 L. Ed., 830;
 
 Memphis & Charleston Ry. Co.
 
 v.
 
 Pace,
 
 282 U. S., 241, 51 S. Ct., 108.
 

 The tests of constitutionality have been concisely
 
 *201
 
 stated by Mr. Justice Harlan in
 
 Jacobson
 
 v.
 
 Massachusetts,
 
 197 U. S., 11, 25 S. Ct., 358, 363, 49 L. Ed., 643, 3 Ann. Cas., 765: ‘If there is any such power in the judiciary to review legislative action in respect of a matter affecting the general welfare, it can only be when that which the legislature has done comes within the rule that if a statute purporting to have been enacted to protect the public health, the public morals or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.”
 

 Manifestly, the law itself cannot be rendered unconstitutional by any possible abuse of it in some particular improvement. The law must be judged by its potential usefulness, and the members of the Legislature are permitted to assume that the public officials who administer it will properly use, and not grossly abuse it.
 

 In some of the briefs filed
 
 amici curiae
 
 in this case, including that of the Attorney General, the argument has been made that to deny the right of recovery upon these bonds would impair the credit of the state of Ohio and its political subdivisions in the money market. The stigma of repudiation is set up as an alleged reason why the constitutionality of the law should be upheld. This court would be remiss in its duty if it did not state in this connection, that no court should be influenced by any such argument. Any court should have the courage to declare a law to be invalid if it violates constitutional limitations, let the result be ever so disastrous
 
 *202
 
 to the state or the owners of the bonds. The eourt has not been influenced in the least by that argument.
 

 We therefore conclude that the law is constitutional ; that it does not violate any provision of the Constitution of Ohio, or the due process or equal protection clauses of the Fourteenth Federal Amendment; that the county commissioners had jurisdiction to determine the necessity for the improvement, and that the purchasers of bonds are not required at their peril to determine as a question of fact whether the improvement was for a private purpose; we further conclude that the credit of the entire county may legally be pledged for the deficiency in the payment of bonds issued to pay for the improvement in the first instance, after exhaustion of special assessments; and that the proceedings have been regular and have become incontestable. The writ prayed for in this case must therefore be allowed.
 

 Writ
 
 allowed.
 

 Jones, Matthias, Day and Kinkade, JJ., concur.