**COBLENTZ v. SPARKS et al.**
**No. 239.**

District Court, S. D. Ohio, W. D.

Oct. 5, 1940.

Eugene G. Kennedy, Virgil Z. Dorfmeier, and L. H. Mattern, all of Dayton, Ohio, for complainant.

N. F. Nolan, Pros. Atty., E. E. Duncan, Asst. Pros. Atty., and E. H. & W. B. Turner, all of Dayton, Ohio, for defendants.

NEVIN, District Judge.

This is a suit in equity to enjoin the levying and collection of special assessment upon complainant's lands in the aggregate amount of three thousand five hundred ninety-six and 80/100 dollars ($3,596.80). These special assessments were ordered levied and collected by the Board of Commissioners of Montgomery County, Ohio, on account of special benefits alleged to have been conferred by the establishment of a certain sanitary sewer district known as The Riverside Sewer District and the inclusion therein of complainant's lands.

The action has been pending for some time. The original bill of complaint was filed on March 8, 1929. Subsequent to the filing of the bill a number of motions were filed and preliminary questions raised. At the threshold defendants challenged the jurisdiction of this court and, on May 25, 1932, filed a motion to dismiss for want of jurisdiction. On November 11, 1932, this motion was overruled. In the meantime plaintiff had filed an amended bill and on March 9, 1932, her second amended bill of complaint.

It is upon this second amended bill of complaint (to which complainant now seeks to file an amendment), the answer thereto filed on behalf of defendants on April 25, 1932, and the reply of complainant to that answer filed on November 11, 1932, that the cause is now before the court.

As appears of record, the preliminary questions raised on the pleadings having been disposed of and the issues having been joined, the cause came on for hearing on November 15, 1932. The trial continued, with some adjournments, until December 22, 1932. Subsequently, as the record shows, counsel for all the interested parties appeared before the court and requested a continuance, for the reasons stated at the time.

As further appears of record, the continuance requested was granted. Hearings were later resumed and the taking of testimony continued until July 13, 1934, at which time a further continuance, for good cause shown, was granted and the trial not again resumed until May 3, 1938. The taking of testimony having been concluded, the cause was argued orally on July 11, 1938. Thereafter, briefs were filed and the case finally submitted on April 6, 1940. Reference to these various proceedings and continuances is made only in order that there may be no misunderstanding now or in the future as to why the case has not been earlier disposed of.

The record and briefs are somewhat voluminous. Numerous exhibits consisting, among other things, of charts, graphs, drawings, maps and photographs were admitted in evidence.

In her second amended bill of complaint complainant prays that "a writ of injunction be granted to complainant commanding defendant, Joseph A. Lutz, as Auditor of Montgomery County, Ohio, not to place on the tax duplicate or duplicates any other or further annual installment or installments of any assessment or assessments arising out of the establishment of Riverside Sewer District against any real estate of complainant and that he do not certify same to the Treasurer of Montgomery County, Ohio, for collection or place any penalty thereon; and further commanding the defendant, W. E. Sparks, as Treasurer of Montgomery County, Ohio, not to proceed to collect any assessment against the property of complainant which heretofore has been or which hereafter may be placed upon the tax duplicate of said County arising out of the establishment of Riverside Sewer District and that he do not attempt to place or collect any penalty thereon."

Since the filing of the second amended bill of complaint there have been changes in the personnel in the offices of the Auditor of Montgomery County, Ohio, and the Treasurer of Montgomery County, Ohio, but proper substitutions have been made.

On August 1, 1938, complainant filed a motion for leave to amend her second amended bill of complaint submitting that it should be allowed "in furtherance of justice and in order that the same may conform to the facts as established in evidence in the trial." The amendment which complainant seeks to file is attached to her motion and marked Exhibit "A". This motion was re-filed as of April 17, 1939.

Extensive briefs in favor of and contra the motion have been filed by counsel for the respective parties.

In their brief filed April 25, 1939, on this question counsel for complainant say:

"Complainant asks leave to file an amendment to her second amended bill of com-

plaint to conform the pleadings to the evidence adduced at the trial.

"This leave is sought under favor of Rule 15 of the Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c, as adopted by the Supreme Court of the United States pursuant to the Act of June 19, 1934, ch. 651, 28 U.S.C.A. §§ 723b, 723c.

"Although the leave to amend was sought prior to the effective date of the new rules, the motion for such leave has been re-filed in this court as of April 17, 1939. It is further conceded by counsel for defendants that complainant's motion is governed by the present rules of court.

"All of the matters sought to be incorporated in the pleading by amendment were raised in the trial of the case upon the testimony of defendants own witnesses. * * *"

■ Defendants agree (Br. April 3, 1939) that such an amendment "normally lies in the sound discretion of the Trial Court, and this discretion is to be exercised liberally in favor of amendment in the interest of justice. New Civil Rules rule 15. Mims v. Reid, 4 Cir., 1921, 275 F. 177, 180." But they urge that: In the instant case plaintiff's application comes too late to be consistent with that diligence demanded by the law; Rule 15(c) cannot be invoked to relate back the amendment where such relation would defeat the Statute of Limitations; constitute a new cause of action, or confer a jurisdiction not initially existing. Defendants urge further that the facts alleged are untrue.

■ Upon a consideration of the record and the briefs of counsel, the court is of opinion that complainant's motion should be sustained and that leave should be, and it is, granted to complainant to file the proposed amendment. Pundt v. Rispin, 5 Cir., 67 F.2d 746.

In its determination of the cause the court has taken into consideration complainant's second amended bill of complaint as thus amended by the allegations contained and set forth in Exhibit "A" attached to and made a part of complainant's motion for leave to file amendment.

As heretofore stated, defendants have from the beginning and still do challenge the jurisdiction of this court to hear and determine this cause. While defendants' motion to dismiss for want of jurisdiction filed on May 25, 1932, was overruled, it was with the understanding that defendants might re-assert their claim in this respect before the case was finally decided, if they wished so to do. This was done by way of motion made in the record (Rec. p. 872) after both sides had rested. Defendants premised both of these motions (the one filed on May 25, 1932, and the other just referred to, appearing in the record) on the proposition that the bill of complaint does not state, nor the facts show, "a real and substantial federal question sufficient to give jurisdiction to this court."

While several authorities are cited in support of this contention, among others, Zucht v. King, 260 U.S. 174, 43 S.Ct. 24, 67 L.Ed. 194; Western Union Telegraph Co. v. Ann Arbor Railroad Co., 178 U.S. 239, 20 S.Ct. 867, 44 L.Ed. 1052; Silvey v. Commissioners of Montgomery County, Ohio, D.C., 273 F. 202, and Postal Telegraph-Cable Co. v. Nolan, D.C., 240 F. 754, nevertheless defendants rely in large measure on the case of Valley Farms Co. v. Westchester County, 261 U.S. 155, 43 S. Ct. 261, 263, 67 L.Ed. 585.

In the Valley Farms case the sewer district was created directly by the state legislature. The constitutionality of the statute was challenged upon certain grounds, among others, that the legislature imposed taxes on lands for the sewer regardless of benefit. Stating that it was "concerned only with application of the Fourteenth Amendment" the Supreme Court held that that amendment was not violated by the act of the legislature there in question. However, where, as here, the district is created by a board and the assessments levied by the board according to benefits then the courts recognize the principle that where there are no benefits, or where the assessment is in substantial excess of any benefit, this amounts to a taking of property in violation of the fourteenth amendment. Reference to this principle is made by the Supreme Court in the Valley Farms case on page 164 of 261 U.S., 43 S.Ct. 261, 67 L.Ed. 585, and authorities are there cited supporting it. It is upon this principle that complainant asserts her claim in the instant case.

■ It has been held that power arbitrarily exerted, imposing a burden without a compensating advantage of any kind, amounts to confiscation and violates the due process provision of the Fourteenth Amendment. Myles Salt Co. v. Iberia &

St. Mary Drainage District, 239 U.S. 478, 36 S.Ct. 204, 60 L.Ed. 392; Gast Realty Co. v. Schneider Granite Co., 240 U.S. 55, 58, 36 S.Ct. 400, 60 L.Ed. 526; Kansas City So. Ry. v. Road Imp. Dist. No. 6, 256 U.S. 658, 41 S.Ct. 604, 65 L.Ed. 1151; Embree v. Kansas City Road Dist., 240 U.S. 242, 36 S.Ct. 317, 60 L.Ed. 624.

Defendants contend that the Board of County Commissioners is a duly elected public body with legislative power granted to it under the General Code of Ohio and that the passing of the resolution creating and establishing the district in question was "a legislative act" (Answer, p. 9, Par. 27—Rec. pp. 1–3).

Complainant submits that the Board of Commissioners are merely an administrative body and that it has been clearly decided that they were not exercising legislative authority but only administrative authority. State ex rel. Bryant v. Park Dist., 120 Ohio St. 464, 166 N.E. 407; Browning v. Hooper, 269 U.S. 396, 405, 46 S.Ct. 141, 70 L.Ed. 330.

The court does not deem it necessary to determine this question nor to dwell on the arguments presented for the reason that it is well settled that even the legislature is not so supreme as that its authority cannot be questioned. The courts will interfere when it is manifest that the legislative authority has been abused. Cases so holding—including Valley Farms Co. v. Westchester County, 261 U.S. 155, 43 S.Ct. 261, 67 L.Ed. 585 and Gast Realty Co. v. Schneider Granite Co., 240 U.S. 55, 36 S.Ct. 400, 60 L.Ed. 526—have already been cited.

In Village of Norwood v. Baker, 172 U.S. 269, pages 277-278-279, 19 S.Ct. 187, 190, 43 L.Ed. 443, the Supreme Court say: " * * * The plaintiff's suit proceeded upon the ground, distinctly stated, that the assessment in question was in violation of the fourteenth amendment, providing that no state shall deprive any person of property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws, as well as of the bill of rights of the constitution of Ohio. * * * But the assessment of the abutting property for the cost and expense incurred by the village was an exercise of the power of taxation. * * * And, according to the weight of judicial authority, the legislature has a large discretion in defining the territory to be deemed specially benefited by a public im-

provement, and which may be subjected to special assessment to meet the cost of such improvement. * * * But the power of the legislature in these matters is not unlimited. There is a point beyond which the legislative department, even when exerting the power of taxation, may not go, consistently with the citizen's right of property. * * * In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation."

Several of the cases here referred to (and others), including the Valley Farms case, were considered and discussed by the court (Judge Hough) in Connor v. Board of Commissioners of Logan County, Ohio, D.C., 12 F.2d 789, 793. In that case the court held "the Legislature did not create the district, and therefore did not designate what property should be assessed," and that under the facts there presented the federal court had jurisdiction to hear the case and grant the relief prayed for.

Upon full consideration the court finds the motion (renewed in the record) of defendants to dismiss this cause for want of jurisdiction is not well taken and that it should be, and it is, overruled.

Numerous objections were noted throughout the trial on behalf of defendants to certain evidence offered on behalf of complainant. Defendants noted exceptions, also, to the rulings of the court on certain motions. These have all been set out in a separate document filed on behalf of defendants on July 6, 1938, with references to the pages of the record where the objections and exceptions may be found. Defendants ask the court to make final rulings on these objections and exceptions. Accordingly, the court has made specific rulings as to each of these objections and exceptions in a separate document filed along with this decision. The rulings of the court follow numerically the objections and exceptions as set forth in the document just referred to, filed on behalf of defendants. In the determination of the case the court has not considered any evidence as to which an objection has been sustained nor any which, on motion, has been stricken out.

The Riverside Sewer District was established in 1926 by the County Commission-

ers of Montgomery County, Ohio, acting under authority of Sections 6602-1 to 6602-33 of the General Code of Ohio, as then in force. In their brief (October 27, 1938) counsel for complainant assert that:

"This is not, in any sense, a suit attacking the validity of the improvement bonds. Since these bonds are admittedly secured by the credit of the county as a whole, their validity and ultimate payment are secure whether the special assessments complained of stand or fall.

"Furthermore, the issues, as finally made up, present no attack upon the constitutionality of the state statute under which the County Commissioners purported to act in establishing the Riverside Sewer District.

"The real complaint is that the County Commissioners exceeded the authority and abused the discretion conferred upon them by law, and that the result of such excess and abuse was a taking of complainant's property without due process of law, in contravention of the Fourteenth Amendment of the Constitution of the United States. To borrow the language of Mr. Justice McKenna: '* * * The law of the state as written is not attacked, but the law as administered * * * is attacked, and it is asserted to be a violation of the Constitution of the United States.' Myles Salt Co., Ltd. v. Board of Commissioners of the Iberia and St. Mary's Drainage District, 239 U.S. 478, 484, 36 S.Ct. 204, 206, 60 L.Ed. 392, 396. Specifically, the complainant urges that the County Commissioners exceeded their authority and abused their discretion, in the following particulars: 1. In establishing the Riverside Sewer District in a sparsely inhabited area where there was not a then existing population sufficiently large and compact to cause a then substantial menace to health. 2. In establishing said district for the primary benefit of the United States Government's experimental air station known as Wright Field, and the City of Dayton, both of which were entirely outside the district and beyond the jurisdiction of the County Commissioners, and for the benefit of other portions of the county outside of the Riverside District. 3. In including complainant's lands within said district and in levying special assessments thereon. 4. In levying special assessments upon complainant's lands which assessments were not in accordance with special benefits conferred. 5. In assessing complainant's lands to pay for benefits conferred upon others. 6. In assessing complainant's lands for alleged benefits prior to the completion of the improvement. 7. In levying special assessments upon the lands of complainant and of all other owners of real estate within said district although failing to provide for an assured outlet for and treatment and disposal of the sewage of the Riverside Sewer District, whereby the claimed benefits are illusory. 8. In assessing the lands of complainant and of all other owners of real estate within said district for the cost of construction of main sewers located within the corporate limits of the City of Dayton, Ohio, and constructed by the Board of Commissioners of Montgomery County without authority of law and in gross abuse of the discretion lodged in said Board."

Complainant submits that "it is apparent that this district was created to safeguard the residents of Dayton against possible contamination of their water supply by Wright Field. No part of Wright Field or the City of Dayton are or were within the Riverside Sewer District. The claimed menace was to persons outside the district and was apprehended by acts to be done outside the district," and that it appears from the record that:

"1. Late in 1924 or early in 1925, the area subsequently included in the Riverside District was sparsely built up and did not have a then population sufficiently large and compact to constitute a substantial menace to health (a) For the foregoing reason no need then existed for the establishment of a sewer district, and the consulting county sanitary engineer so found after a careful survey. 2. No substantial change is shown to have taken place within the area up to the time of the establishment of the district in May, 1926. (a) Indeed it is admitted by the testimony of the consulting engineer that the establishment of the district was 'precipitated by influences outside the district.' 'It is a gross abuse of discretion reposed in county commissioners to establish a sewer district outside of a municipality and to construct therein a system of sewers and water supply, where there is not a present population sufficiently large and compact to cause a present menace.' State ex rel. Bowman v. Board of Allen County Com'rs, 124 Ohio St. 174, Fifth Syllabus, 177 N.E. 271. 3. The prime moving fac-

tor in the establishment of the district was the proposal of the Government to erect a disposal plant which would empty its effluent into Mad River above the wells of the City of Dayton. (a) This, it is said, would have menaced the water supply 1. Of the City of Dayton, and 2. Of other sanitary district in the county, already established and drawing their water supply from the City of Dayton's wells. Thus, it appears that the Riverside District was created and the lands therein assessed to prevent a potential menace to the health of 1. Residents of the City of Dayton, and 2. Residents of certain sanitary districts in Montgomery County other than those in the Riverside District itself. Complainant and others in the district are being assessed for this benefit given to the City of Dayton and other districts. A situation similar to this existed in the sewer district created at Indian Lake and was commented upon by Judge Hough in his decision in the case of Connor v. Board of Commissioners, D.C., 12 F.2d 789, page 796.

"Having determined upon the installation of a sewer along Springfield Pike to provide an outlet for Wright Field, the Commissioners created around that sewer a sanitary district of some three thousand one hundred and seventy acres (3,170). This area consisted almost entirely of farm land, including complainant's lands, together with a few parcels of platted land. These plats were either sparsely built or without any building or population whatever. * * * Mr. Mosby, one of the County Commissioners testified (Rec. Pp. 785, 786): 'A. Our experience was, all through this time, from real estate men, that it was useless to try to sell lots or develop property in territories not having the sanitary sewers and city water supply. Q. So that in order to promote real estate development it was your experience that it was essential to create sanitary sewer districts? A. I mean by that this, that before you would improve a district or improve any district, to increase population you had to have buildings there for somebody to move into, to increase the population, and that real estate men, or somebody who had this property to sell, had to do this to supply the demand for the increase in population.' * * * By stipulation (Rec. p. 805) the testimony of County Commissioner Mason Prugh is to the same effect. The third Commissioner, John J.

Baker, is deceased and did not testify (Rec. p. 805)."

Defendants urge that:

"It would seem that the Plaintiff's position in this lawsuit is founded upon either one of two very patently false hypotheses: A. The Plaintiff is assuming that because her opinion as to the probability of her lands requiring sewerage before 1960 differs from the opinion of the County Commissioners, their opinion is unreasonable and, therefore, unconstitutional; or B. She is assuming that her assessment is for present use and enjoyment of the sewer. Both of these assumptions are wrong because: 1. Mere difference of opinion between this Plaintiff and the County Commissioners as to the necessity for the establishment of the District and construction of the main sewer as at present constituted is not a ground for injunctive relief. Plaintiff does not claim upon the facts alleged any lack of reasonable basis in 1926 for the County Commissioners' action. What she does claim in this regard the Supreme Court has already held does not indicate a lack of reasonable basis for the County Commissioners' belief. In short, her claim in this regard is frivolous. 2. The Plaintiff is not being assessed for any connection to the sewer or for her present use of the same. She is being assessed for her right to connect in the future as and when she is ready to connect by means of branch mains and laterals with this present main sewer as an outlet for her sewage. She is being assessed for a future outlet rather than for present use.

"The Supreme Court has already declared that upon either of these hypotheses the judgment of the County Commissioners cannot be attacked as unreasonable."

After an extended argument and the citation of many authorities defendants conclude that: "A fair summary of the efforts of the Plaintiff in this regard might be properly characterized as an effort to evade her fair full share of responsible citizenship in the community in which she lives. She seeks to obtain, and has actually received, benefits to her property of the nature of an unearned increment, due to the creation of the District and the construction of the main outlet sewer. This sewer outlet has been constructed of a size sufficient to enable her to connect therewith and to enable her neighbors to connect therewith at such time in the future as she determines to turn her farm

612

lands into municipal properties. The sewer capacity is there, and she is asked to pay her fair and just proportion of that capacity for the benefit of herself and the persons who will subsequently own her real estate. * * * In any event, no matter from what angle the Plaintiff's case is viewed, whether from the practical position of a mere difference of opinion between the Commissioners and herself, or in the strong, white legal light afforded by the Valley Farms case, or in the frank, noontide effulgence of common sense, the Plaintiff is not entitled to the relief which she here prays."

At the beginning of the trial counsel for the respective parties in their "Opening Statements" said (Rec. p. 7): Mr. Mattern (of counsel for complainant): "The questions of fact boil themselves down to actually their bearing upon the sole complaint now remaining in the second amended bill, as to whether or not, in including this complainant's land within the district as established, the Board of County Commissioners assessed, or sought to assess against this land, where no corresponding benefit existed. We are before the court on the second amended bill practically on the sole question of benefits to this complainant's land and the related question as to whether, by reason of the fact that there were not benefits commensurate with the assessment—whether or not there were any benefits at all—the commissioners abused their discretion in including within the district the complainant's land, and the remaining constitutional question as to whether or not, if our contention is correct that the land is assessed without being benefited, that that constitutes a taking in violation of the Fourteenth Amendment. So that actually the sole question of fact in this case is whether or not the farm lands of Mrs. Lizzie J. Coblentz sustained the benefit from the improvement set up by the commissioners which they say in their answer in their discretion they determined that did accrue to this land." (Rec. p. 11) Mr. Hoskot (of counsel for defendants): "If Your Honor please, in order to save time, and with the court's permission, we will waive our opening statement. It will be just merely denial of what Mr. Mattern has stated. It is all contained in the answer."

█ It has been held that: "It is a gross abuse of the exercise of that discretion to establish such a sewer system in a sparsely inhabited district or as a part and parcel of a plan to promote a private enterprise, or where there is no substantial menace to health; and, where such abuse can be fairly made to appear, a court of equity may enjoin the construction at any time before the issuance of negotiable obligations to provide the funds for same." State ex rel. Bowman v. Board of Allen County Com'rs, 124 Ohio St. 174, Sixth Syllabus, 177 N.E. 271; Road Imp. District v. Missouri Pacific Railroad, 274, U.S. 188, 47 S.Ct. 563, 71 L.Ed. 992; Connor v. Board of Commissioners, D.C., 12 F.2d 789; Village of Norwood v. Baker, 172 U.S. 269, 19 S.Ct. 187, 43 L.Ed. 443; Gast Realty v. Schneider, 240 U.S. 55, 36 S.Ct. 400, 60 L.Ed. 526; Houck v. Little River Dist., 239 U.S. 254, 36 S.Ct. 58, 60 L.Ed. 266.

Upon a consideration of the whole of the record, the briefs and arguments of counsel and the applicable law, the court has arrived at certain findings and conclusions. Inasmuch as the findings set forth quite fully the facts as disclosed by the record, the court deems it unnecessary to discuss them further here, nor would it serve any useful purpose to do so. The issues appear to be clear. From a study of all the evidence, both the oral testimony and the documentary proofs, the court feels bound to conclude that it has jurisdiction to hear and determine this cause; that this case falls squarely within the rule laid down by the Supreme Court of Ohio in State ex rel. Bowman v. Commissioners of Allen County, 124 Ohio St. 174, 177 N.E. 271, and that complainant is entitled to the relief for which she prays.

Based upon its consideration of the entire record, the court has arrived at the following:

### Findings of Fact.

1. Riverside Sewer District is a sanitary sewer district established by the Board of Commissioners of Montgomery County, Ohio, by resolution under date of May 28, 1926 (Ex 8). It is bounded on the west by the eastern corporation line of the City of Dayton, Ohio; on the north by the right of way of the C. C. C. & St. L. Railroad; on the north and east by the United States Government experimental air station known as Wright Field; on the east by said Wright Field and the line of division between Montgomery and Greene Counties; and on the south by an irregular line south of Xenia Pike. The incorporated

Village of Riverside located on and immediately adjacent to Springfield Pike is included in the district by virtue of its petition to be so included evidenced by ordinance of said village. No other incorporated city or village lies in whole or in part within said district. No part of the city of Dayton or of Wright Field lies within said district. Mad River runs roughly parallel to the northern boundary of the district as well as Springfield Pike. Springfield Pike is near the extreme northern boundary of the district and runs approximately northeast and southwest.

2. At the time of the establishment of the district the entire district was sparsely populated, and conditions therein were not such as to constitute any substantial menace to health within the district. The district, as established, comprised 3,170 acres of land, of which 2,550.76 acres was unplatted farm land devoted to agricultural purposes, and 619.24 acres was platted. The plats were all sparsely built, some of them having no building thereon whatsoever. Practically all of the plats were along the · corporation line of the City of Dayton and along Springfield Pike. The Richland Farms Plat, lying in the south central part of the district, was sparsely built with residences, described by witnesses as "shacks", offering no substantial menace to health in the district, and incapable economically of bearing the cost of a public sanitary sewer system in any event.

3. In 1924 certain persons financially interested in selling lots on plats adjacent to the City of Dayton petitioned the Board of Commissioners of Montgomery County to create a sanitary sewer district to include the plats in which they had a financial interest, the same being within the limits of the Riverside Sewer District, as thereafter established. Upon receipt of such petitions the board caused an inspection and investigation to be made by its sanitary engineer to determine the need for such sewer facilities. At said time said sanitary engineer found no conditions warranting the establishment of such district.

4. During the period between 1924 and 1926 the City of Dayton, Ohio, caused wells to be sunk in the bed of Mad River at various points north of the present northern boundary of Riverside Sewer District for the purpose of supplying water to the City of Dayton.

5. In 1926 the United States Government proposed to build and operate upon its land a sewage disposal plant to care for the sewage of Wright Field, at a cost of Twenty-Five Thousand Dollars ($25,000). Such plant, as proposed, would have discharged its effluent into Mad River upstream from the said wells of the City of Dayton and would have created a menace of pollution of the water supply of said city.

6. As an alternative, the United States Government offered to pay said sum of Twenty-Five Thousand Dollars ($25,000) toward the construction of a main sewer from Wright Field, along Springfield Pike and for an outlet of said sewer into the main sewers of the City of Dayton. Thereupon the Board of Commissioners of Montgomery County proposed to construct said main sewer from Wright Field to the corporation line of the City of Dayton, and an additional main sewer from said corporation line to First and Findlay streets within the City of Dayton, where same was to have an outlet into an existing sewer of the City of Dayton.

7. In the resolution establishing the Riverside Sewer District adopted by the Board of County Commissioners on May 28, 1926 (Ex. 8), it is stated, inter alia, that "the members of this Board are of the opinion that there is an actual need of such improvement in all that territory immediately adjacent to the Springfield Pike, and that it is extremely desirable to cooperate with the City of Dayton, United States Government, and, if possible, the Village of Riverside so as to protect the· water supply for the whole community."

8. On June 2, 1926, a resolution was adopted by the Board of County Commissioners of Montgomery County, Ohio (Ex. 8), including the Village of Riverside within the district, and on the same date a resolution was adopted by the Board of Commissioners approving the general plan for the District. On June 4, 1926, a resolution was adopted by the Commissioners approving the detailed plans for the District, and on the same date a resolution of necessity for the construction of the sanitary sewer was adopted by the County Commissioners, with a finding that the entire cost was to be especially assessed against benefitted property within the district "excepting the amount to be paid by

the United States Government for the Wright Field connection." On July 1, 1926, a resolution was .adopted to proceed with the improvement, and on the same date a resolution requested the County Auditor of Montgomery County to certify the life of the improvement for the purpose of issuing bonds of the District to pay for the improvement, as required by the statute. On July 2, 1926, the certificate of the Auditor of Montgomery County, Ohio, estimated the life of the sewer for the purpose of the issuance of said bonds, as required by statute, at 25 years.

9. At the first opportunity given her under the law plaintiff protested in writing against the assessment of her lands, and she also attended at the time and place fixed by the Board of Commissioners of Montgomery County and urged her protest, both personally and by counsel.

10. At the time of the establishment of said district there existed no substantial menace to health by reason of any conditions existing within the district. The only menace, if any, existing by reason of conditions within said· district, was a potential menace of pollution of the water supply of the City of Dayton, Ohio, by reason of the population immediately along the Springfield Pike. Such potential menace, if ·any, was not very great because the number of houses along said Springfield Pike was small and because most of such houses lay to the westerly or downstream side of the wells of the City of Dayton.

11. The creation of the Riverside Sewer District was precipitated by conditions outside the district, namely, the threatened contamination of the water supply of the City of Dayton by the proposed erection of a sewage disposal plant by the United States Government at Wright Field.

12. The Board of County Commissioners of Montgomery County caused to be constructed a main sewer of a diameter of fifteen inches along Springfield Pike, from Wright Field to the corporation line of the City of Dayton and a main sewer of a diameter of thirty-nine inches within said City of Dayton from said corporation line to the intersection of First and Findlay Streets, together with other sewers laid in a small part of the northwest portion of said district. No part of the sewers con-structed in said district approach closer to plaintiff's lands than approximately one mile.

13. Complainant's lands do not receive any present or immediate benefit from the establishment of said district or the construction now completed therein.

14. In establishing said district, the Board of County Commissioners did not proceed in accordance with law to preserve or promote the public health or welfare within said district or within any territory under the jurisdiction of said commissioners. On the contrary, said commissioners established said district for the benefit and accommodation of the City of Dayton, the United States Government and for the benefit of a few real estate developers, in order to aid them in selling lots within said district.

15. In defining the limits of said district and in including therein the farmlands above referred to, including complainant's lands, the Board of Commissioners of Montgomery County did not act either upon any present need within the district for such improvements nor upon any need reasonably to be anticipated within the estimated life of the improvement. On the contrary, said commissioners acted upon the assumption that their creation of the district would tend to control the future direction of growth of the City of Dayton and that in creating such district they would aid real estate developers to bring into said district a future population sufficient to require water and sewage facilities. In so doing, the commissioners attempted to act, in effect, as a planning board to regulate and govern the future growth of the City of Dayton.

16. The apportionment and levy of assessments to pay the cost of said improvement, by the Board of County Commissioners, was so disproportionate to benefits as to be entirely arbitrary and to clearly disclose a gross abuse of discretion in this to-wit: Complainant's farm of 141 acres was assessed Three Thousand, Five Hundred Ninety-Six Dollars and Eighty Cents ($3,596.80) for supposed potential benefits estimated by the commissioners to accrue to her at a time 15 to 20 years in the future, and after an additional expenditure by her for additional main sewers and laterals; on the other hand, the United States Government was given immediate use of sewer and water facilities

for Wright Field, and with an acreage of 5,000 acres and with 10,000 estimated employees, for the sum of Twenty-Five Thousand Dollars ($25,000).

17. Any potential benefits that may be supposed to accrue to complainant's lands are wholly illusory and are not secured to her in any binding form. The main sewer, which it is said provides an outlet for the sewage from the farmlands, if and when needed, has its outlet into a smaller sewer belonging to and under the jurisdiction of the City of Dayton. Certain correspondence was had between Sanitary Engineer of Montgomery County and an officer of the Quartermaster's Corps, U. S. Army. Also certain correspondence was had between the Director of Public Service of Dayton, Ohio, and an official of the Department of Health of the State of Ohio. This correspondence suggests the possibility of securing an agreement between the City of Dayton and Montgomery County, under which the City would guarantee to the county the continued use of an outlet from the Riverside Sewer District into the Dayton sewers, and would, at some future time, build an additional main sewer from First and Findlay Streets to the downtown sewers of the City of Dayton. Certain verbal conversations between the Director of Service of Dayton and the Sanitary Engineer and County Commissioners were also had, the exact nature of which does not appear, but which presumably had to do with such proposed agreement. However, the City of Dayton never entered into any binding agreement concerning the above matters. Complainant's right to an outlet for disposal of the sewage from her property, as, if and when she ever might have occasion for such outlet, is dependent wholly upon the views and conclusions of the then officials of the City of Dayton.

18. That part of the thirty-nine inch main sewer constructed by the Board of Commissioners of Montgomery County within the corporate limits of the City of Dayton, and for the cost of which complainant is assessed, was built without any valid and binding agreement between Montgomery County and the City of Dayton, and same is wholly within the City of Dayton and subject to its exclusive jurisdiction. The City is under no obligation to permit the continued use of this sewer main as an outlet from the Riverside Sanitary District. Furthermore, many residents of the City of Dayton have immediate access to and use of said sewer without any obligation to pay any part of the cost of building the same. To assess complainant for a part of the cost of said sewer upon the theory that it constitutes a potential benefit to her lands, while persons having the immediate use thereof pay nothing therefor, is discriminatory and arbitrary and constitutes a gross abuse of discretion on the part of the Board of Commissioners of Montgomery County, Ohio.

Conclusions of Law.

1. The issues raised present a federal question; the equity jurisdiction of the United States District Court for the Southern District of Ohio, Western Division, has been properly invoked; and this court has jurisdiction to hear and determine the issues and to grant to complainant the relief prayed for.

2. The authority under which the Board of Commissioners of Montgomery County acted in establishing the Riverside Sanitary Sewer District, and in assessing complainant's real estate, is found in sections 6602-1 to 6602-33 of the General Code of Ohio, as in effect in 1926.

3. Section 6602-1 of the General Code of Ohio confers the power on Boards of County Commissioners to establish sanitary sewer districts only where the same are required for the purpose of promoting the public health and welfare.

4. In establishing The Riverside Sewer District, consisting of approximately three thousand, one hundred seventy (3,170) acres, the Board of Commissioners of Montgomery County was guilty of a gross abuse of discretion in including within said district some one thousand, four hundred (1,400) acres of land, including the complainant's land, which said one thousand, four hundred (1,400) acres of land was sparsely settled farm land, and wherein there was not a population sufficiently large and compact to cause a menace to health at the time said district was established, and wherein the establishment of the district contributed nothing to the preservation or promotion of the public health and welfare.

5. The Board of Commissioners of Montgomery County was guilty of a gross abuse of discretion in establishing The

Riverside Sewer District and in including therein the plaintiff's lands, there being within said district no substantial menace to health, said district being established primarily for the benefit and accommodation of the City of Dayton, Ohio, and Wright Field, both of which were outside the limits of the district as established.

6. Section 6602-8 of the General Code of Ohio provides that: "In the construction of a main, branch, or intercepting sewer or sewers and such treatment or disposal works, the property immediately abutting upon such main, branch, or intercepting sewer shall be assessed for local drainage, and the balance of the cost and expense of such improvement to be paid by assessments shall be assessed, as a district assessment, upon all the property, including the abutting property, within said district proportionately, and in accordance with the special benefits conferred, less such part of said cost as shall be paid by the county at large. * * *"

7. The Board of Commissioners of Montgomery County was guilty of a gross abuse of discretion in levying special assessments of Three Thousand, Five Hundred Ninety-Six Dollars and Eighty Cents ($3,596.80) on complainant's land as part of the cost of establishing the Riverside Sewer District and of installing sewers therein, for the reason that said improvement conferred no special benefit, either immediate or potential on complainant's land.

8. The act of the Board of Commissioners of Montgomery County in levying said special assessments on complainant's land was an unconstitutional exercise of the powers vested in said board, in that it constituted a taking of complainant's property without due process of law, in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States.

9. Complainant is entitled to the relief prayed for in her Second Amended Petition.

Counsel may prepare and submit a decree in accordance with the rulings of the court as herein set forth.